

DEH/MWS: USAO2018R00215

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | * |
| | *    CRIMINAL NO. RDB-19-0264 |
| v. | * |
| | *    (Conspiracy to Commit Wire Fraud, |
| **CHAD ARRINGTON,** | *    18 U.S.C. § 1349; Wire Fraud, 18 |
| a/k/a "Chad Focus," | *    U.S.C. § 1343; Aggravated Identity |
| | *    Theft, 18 U.S.C. § 1028A; Forfeiture, |
| **Defendant.** | *    18 U.S.C. § 981(a)(1)(C), 21 U.S.C. |
| | *    § 853, and 28 U.S.C. § 2461(c)) |
| | * |

*******

## INDICTMENT

### COUNT ONE
### (Conspiracy to Commit Wire Fraud)

The Grand Jury for the District of Maryland charges that at all times relevant to this Indictment:

### Relevant Persons and Organizations

1. The defendant, **CHAD ARRINGTON, a/k/a "Chad Focus,"** was a resident of Owings Mills, Maryland and then Randallstown, Maryland. **ARRINGTON** was employed by Company 1 as a Search Engine Optimization ("SEO") Specialist from approximately 2011 to August 2018. As an SEO Specialist, **ARRINGTON** was responsible for promoting and marketing Company 1's products and services online. Company 1 assigned **ARRINGTON** an American Express company credit card (the "Credit Card") after **ARRINGTON** signed an Agreement in which he agreed to use the Credit Card only for business expenses related to Company 1. The Credit Card was periodically replaced and was associated with account numbers ending in 62006, 63004, 64002, 65009, 66007, 67005, 68003, and 69001.

2. Co-Conspirator 1 was a resident of Owings Mills, Maryland.

3. Co-Conspirator 2 was a resident of York, Pennsylvania.

4. Co-Conspirator 3 was a resident of Alexandria, Virginia.

5. Co-Conspirator 4 was a resident of Sarasota, Florida.

### The Scheme and Artifice to Defraud

6. From at the latest January 2015 and continuing through at least August 2018, in the District of Maryland and elsewhere, the defendant,

**CHAD ARRINGTON, a/k/a "Chad Focus,"**

and others known and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a scheme and artifice to defraud Company 1 and to to obtain money and property from Company 1 by means of materially false and fraudulent pretenses, representations, and promises ("the scheme to defraud").

### The Conspiracy to Execute the Scheme to Defraud

7. From at the latest January 2015 and continuing through at least August 2018, in the District of Maryland and elsewhere, the defendant,

**CHAD ARRINGTON, a/k/a "Chad Focus,"**

did knowingly and willfully conspire, combine, confederate, and agree with persons known and unknown to the Grand Jury, to commit wire fraud, that is to knowingly execute and attempt to execute the scheme to defraud through the use of interstate wires in violation of Title 18, United States Code, Section 1343 ("the conspiracy to defraud").

### Object of the Scheme to Defraud and Conspiracy

8. The object of the scheme to defraud and the conspiracy to defraud was for **ARRINGTON** to use the Credit Card to enrich himself and to enrich his Co-Conspirators by making unauthorized purchases unrelated to the business of Company 1, and instead were

purchases made for the personal benefit and gain of **ARRINGTON**, Co-Conspirator 1, Co-Conspirator 2, Co-Conspirator 3, Co-Conspirator 4 and others known and unknown to the Grand Jury.

### Manner and Means of the Scheme to Defraud and Conspiracy

9. It was among the manner and means of the scheme to defraud and conspiracy that:

   a. **ARRINGTON** and his co-conspirators used the Credit Card for fraudulent purchases, including to promote the Chad Focus brand and to make unauthorized purchases that benefitted them each personally;

   b. **ARRINGTON** used the Credit Card to make over $1 million in unauthorized purchases from entities and accounts controlled by Co-Conspirator 2 and Co-Conspirator 3, and then Co-Conspirator 2 and Co-Conspirator 3, in turn, kicked back hundreds of thousands of dollars to **ARRINGTON** by funneling payments to **ARRINGTON** in cash and to accounts controlled by **ARRINGTON**;

   c. **ARRINGTON** asked Co-Conspirator 1 and Co-Conspirator 4 to use computer software to make false entries on the Credit Card billing statements in order to conceal the recipient of the payments from **ARRINGTON**'s supervisor and Company 1; and

   d. **ARRINGTON** forged the signature of his supervisor on his Credit Card billing statements to make it appear as though he had received approval for certain purchases when, in fact, he had not.

3

## Overt Acts

### *Buying Music Equipment for Personal Use*

10. Between June 1, 2016 and July 25, 2018, **ARRINGTON** used the Credit Card to make unauthorized purchases of sound equipment, studio kits, instruments and music technology for his personal use, including the purchase of over $65,000 of musical equipment from a music technology and instrument retailer on or about June 10, 2016.

### *Buying Followers, Tags, and Views*

11. On or about January 27, 2017, **ARRINGTON** organized a Maryland Limited Liability Company called Focus Music Entertainment LLC which, according to its Articles of Organization, was formed for the purpose of "marketing music management branding entertainment services." Using the equipment that he fraudulently obtained, **ARRINGTON** created an artist alter-ego, "Chad Focus", and produced a number of hip-hop songs through his company, Focus Music Entertainment LLC.

12. **ARRINGTON** used the Credit Card to make unauthorized purchases from online streaming platforms that offered services where artists could pay to have the platforms artificially increase **ARRINGTON**'s song play counts on Spotify and other music platforms. For example, beginning June 11, 2017 and continuing through September 25, 2017, **ARRINGTON** purchased over $20,000 in services from Streamify.

13. On August 22, 2017, **ARRINGTON** sent an email to the support personnel for Streamify with the subject line "Need Help With My Campaign," in which **ARRINGTON** stated, in part:

> I've neared [sic] spent $5000 plus or more with you guys this month and I want to keep building my momentum. Could I spent [sic] more money and make sure my track continues to get hundreds of thousands of plays per day? If I stop promotion do you remove me from playlists or are these permanent placements? Will the plays

4

just fall completely off or will we see real listeners and followers and continue to build?

14. Between April 7, 2018 and July 26, 2018, **ARRINGTON** fraudulently used the Credit Card to purchase "likes," "followers," "tags" and "views" across various social media and viewing platforms, such as Facebook, Instagram and YouTube. **ARRINGTON** used the Credit Card to make unauthorized payments to an online platform company to promote his brand by paying accounts for "likes", "followers", "tags" and "views" to make his brand appear more popular.

15. On or about April 25, 2018, **ARRINGTON** asked the online platform company to find him "likes" and "views" for **ARRINGTON**'s posts in the following direct message exchange:

| | |
|---|---|
| Representative: | . . . I start work to increase followers parller [sic] working on IG [Instagram] post tag. |
| **ARRINGTON**: | ok. my ig [Instagram] need views/likes for these.posts. dont worry bout tags..gimme.likes and views |
| **ARRINGTON**: | ig [Instagram] is deleting all ya taggin anyways |
| Representative: | Ok chad we start giving you like and views |
| Representative: | With tagging |
| **ARRINGTON**: | ok |
| **ARRINGTON**: | wow ok thanks lets rock this!!! |

16. Between in or about January 18, 2016 and July 24, 2018, **ARRINGTON** used the Credit Card to make over $300,000 worth of unauthorized purchases from Fiverr, a company that offered services to boost the popularity of artists. These purchases were for various services, including "do radio promotion and fm chart placement in US," "create or design your facebook fanpage," "promote your hip hop song on fm station and expose to 1000," "submit music to top

5

records labels," "guarantee billboard charts n drt n itunes n European" and other purchases to promote his social media streams.

17. Between October 3, 2017 and April 14, 2018, **ARRINGTON** used the Credit Card to make unauthorized purchases of over $70,000 worth of services from Jaywan Inc., including the promotion of mixtape videos and singles. Jaywan Inc. provided **ARRINGTON** with services to promote his image and music including YouTube "views" (100,000 views for $1,119), Spotify "streaming" (250,000 streams for $1,999), and Instagram "followers" (15,000 followers for $1,499).

*Buying Tickets to Concerts and Events*

18. Between October 22, 2017 and July 29, 2018, **ARRINGTON** made unauthorized purchases of hundreds of concert and event tickets using the Credit Card, including the purchase of tickets to events where he performed, such as $125,000 in tickets to the "One Heartless Summer Harder Than Ever Tour" from Ticketmaster. **ARRINGTON** used the Credit Card to make unauthorized purchases of tickets to other events throughout the United States, which he attended with Co-Conspirator 1 and Co-Conspirator 2.

*Self-Promotion and Billboards*

19. Between July 1, 2017 and October 30, 2017, **ARRINGTON** used the Credit Card to make over $12,000 in unauthorized payments to "B. Classic Photography," a company operated by Co-Conspirator 1. **ARRINGTON** also used a digital wallet and payment processor to make unauthorized purchases of over $55,000 from Co-Conspirator 1. Co-Conspirator 1 and his company provided photographic and video recording services related to Chad Focus music.

20. Between May 14, 2018, and August 2018, **ARRINGTON** used the Credit Card to make unauthorized payments to multiple billboard companies to display images of

6

ARRINGTON and his website throughout the United States and to promote Chad Focus and Focus Music Entertainment LLC. These unauthorized purchases included, for example, a billboard which contained an image of ARRINGTON surrounded by stacks of cash and the words, "Get to the Money," another billboard that depicted an image of ARRINGTON with the words, "Chad Focus. I will teach you how to be rich," and another billboard which depicted his hip-hop alter-ego, Chad Focus, staring at his real-life persona, Chad ARRINGTON, with the caption "Fame vs. Power."

*Fraudulently Obtaining Cash and Jewelry*

21. **ARRINGTON** utilized the Credit Card to charge unauthorized payments to various entities controlled by **ARRINGTON** and his Co-Conspirators. **ARRINGTON** and his Co-Conspirators used these entities as conduits to funnel cash back to **ARRINGTON's** personal bank accounts, as well as to the personal bank accounts of Co-Conspirator 2 and Co-Conspirator 3. Beginning at the latest February 11, 2015 and continuing through August 2018, **ARRINGTON** charged the Credit Card over $72,000 for purchases from "NUKEMYRANK" ("NMR"), an account controlled by **ARRINGTON** and registered with an online payment processor. **ARRINGTON** then transferred this money from the online payment processor to **ARRINGTON's** personal bank account.

22. Between April 15, 2015 and December 27, 2015, **ARRINGTON** charged the Credit Card for over $133,000 in unauthorized purchases from "BackLinksMaker.com," an account controlled by Co-Conspirator 3 and registered with an online payment processor. Co-Conspirator 3 then transferred over $90,000 to **ARRINGTON's** NMR account registered with an online payment processor, and over $20,000 to Co-Conspirator 3's personal bank account.

7

23. Between March 9, 2016 and July 16, 2018, **ARRINGTON** charged the Credit Card over $1.3 million dollars for unauthorized purchases from MediaLinkPro, an account controlled by Co-Conspirator 2 and registered with an online payment processor.

24. On June 2, 2016, a representative from the online payment processor sent an email to Co-Conspirator 2 questioning charges to Co-Conspirator 2's account from the Credit Card. The representative stated:

> I'm reaching out about an important issue with your [] account. As part of our ongoing monitoring of all [] accounts, we need some additional information about your business and use of our services. Please reply to this email with: a description of the goods or services that are presently being sold through your [] account, and a description of your relationship with active customer with card ending in [] and any explanation behind their repetitive charges. We need to gain some clarity on these questions in order to fulfill our KYC (know your customer) requirements, so I appreciate you working with me on this! We will need to confirm this information before we can resume transfers to your bank account.

25. On or about June 3, 2016, **ARRINGTON** created a document as a response to the representative's inquiry, which purported to be written by Co-Conspirator 2. On June 6, 2016, Co-Conspirator 2 emailed the document that **ARRINGTON** created to the Representative. The document stated, in part: "It has been a please [sic] to work with Mr. Arrington and we truly are the best in this industry in building Custom promotions for any website to rank. Chad Arrington is one of many satisfied customers and we hope to look forward to great working relationship for years to come." The online payment processor unfroze Co-Conspirator 2's account and Co-Conspirator 2 transferred over $1.3 million to Co-Conspirator 2's personal bank accounts.

26. Between March 17, 2016 and July 31, 2018, Co-Conspirator 2 withdrew over $900,000 cash from his personal bank accounts. During this same time period, **ARRINGTON** deposited over $300,000 cash into his personal bank accounts. For example, on July 6, 2017, Co-Conspirator 2's transferred $4,854 from his online payment processing account to his

8

personal bank account. On July 7, 2017, Co-Conspirator 2 withdrew $4,500 from his personal bank account at a branch in York, Pennsylvania. This same day, **ARRINGTON** deposited $2,100 at an ATM in York, Pennsylvania.

27. Co-Conspirator 2 also funneled payments back to **ARRINGTON** through wires. For example, on or about March 22, 2018, Co-Conspirator 2 wired $1,550 from his personal bank account to **ARRRINGTON**'s online payment processing account.

28. Between March 29, 2018 and July 5, 2018, **ARRINGTON** used the Credit Card to purchase over $65,000 worth of custom jewelry, including a bear pendant valued at $11,500. **ARRINGTON** posted several images and videos to his Instagram account showing him wearing the bear pendant. The post said, "Jewels ima show you what it's bout . . . Ain't no DEBATE check the chart, check the Count! Prolly don't know what I'm talking about! All about money! All about cash! Dj spin MY RECORD . . ."

*Luxury Vehicles, Travel and Night Life Expenses*

29. Beginning at the latest January 2015 and continuing through August 2018, **ARRINGTON** charged the Credit Card over $300,000 for various unauthorized international and national travel expenses, hotels, airfare, restaurant bills, luxury vehicle rentals, night life expenses and other miscellaneous expenses. **ARRINGTON** also charged the Credit Card for unauthorized travel expenses and airline tickets for the benefit of Co-Conspirator 1 and Co-Conspirator 2.

30. Between approximately December 11, 2017 and June 18, 2018, **ARRINGTON** used the Credit Card to make over $100,000 in unauthorized purchases of clothing and accessories, including hats that displayed his artist name, "Focus," and other apparel. **ARRINGTON** provided the clothing and accessories to his associates, free of charge. For

example, on February 16, 2018, **ARRINGTON** sent a message to an associate and said, ". . . GOT SOME GIFTS 4 u. Just wanted to [] mail you a FOCUSWEAR Appreciate package. Want to send you a Focus Fitted Hat, Dad Hat, T-shirts, Sweatshirt, Smartwatch or Combo. Need your SIZES, Full Name, Cell Phone, Address, and Email address please! We want to send ALL gifts off this week . . ."

*Other Business Endeavors*

31. Between approximately July 7, 2018 and July 26, 2018, **ARRINGTON** used the Credit Card to make unauthorized purchases of items, including over $80,000 in purchases of electric bikes, hover boards, and scooters and purchases related to a bike sharing program. **ARRINGTON** also used the Credit Card to make over $25,000 in unauthorized purchases from a company to install bike sharing stations in Maryland.

32. **ARRINGTON** used the Credit Card to make unauthorized purchases of over $170,000 from an e-commerce company, including purchases related to **ARRINGTON's** other business endeavors, such as bicycles and scooters.

*Concealing Fraudulent Charges*

33. Between approximately January 2015 and August 2018, **ARRINGTON** forged his supervisor's signature and approval on his Credit Card billing statements and sent those false payment authorizations to other employees who relied on the authorizations to ultimately pay off the outstanding balance of the Credit Card.

34. **ARRINGTON**, Co-Conspirator 1 and Co-Conspirator 4 created false entries on the Credit Card billing statements to conceal certain purchases and make the payments appear company-related. For example, on June 6, 2016, **ARRINGTON** emailed Co-Conspirator 4 and said, "I want to get amazing edits to my amex statement. Basically, I gotta change some

10

different vendors and numbers on my amex statement. Gotta look just like the original. I'm sending you a spreadsheet. After this clean job we can get to the emojis and have some fun." Attached to the email were **ARRINGTON**'s Credit Card statements for April and May 2016 and a spreadsheet of requested edits to vendor names and payment amounts. **ARRINGTON** subsequently submitted to his supervisor a false American Express statement that had been edited by Co-Conspirator 4 and contained false information.

35. On August 1, 2016, **ARRINGTON** emailed Co-Conspirator 4 and said, "SO I need you to send me back 2 perfectly edited statements . . . PDF can never look edit [sic]. Has to be identical to original. You are a beast at that anyways." On August 9, 2016, **ARRINGTON** emailed Co-Conspirator 4, and stated, in part:

> My entire back is against the Wall bro. I have till Midnight Tuesday 8/9/16 to turn in my edited statements bro. I've been emailed by my account manager 3 times reminding me it can't be late. If I don't turn in by Midnight they will suspend my account. If I don't have statement turned in by Noon Wednesday 8/10/16 I will be Permanently Suspended and fired from my contract. [Co-Conspirator 4,] I needed these last week but right now it's real Bro . . . Please bro move mountains for me. I would send you more Money if need be but all my invoices I paid for you through this same statement account. They shut my account down I have no credit to work with you or anyone else. Please bro. Ttyl.

36. **ARRINGTON** and Co-Conspirator 1 created false invoices for **ARRINGTON** to submit to conceal unauthorized purchases on the Credit Card. For example, on March 13, 2017, **ARRINGTON** sent Co-Conspirator 1 an email with the subject line " . . . Classified Work SHit . . ." **ARRINGTON** stated:

> SO I need you to send me back perfectly edited statements. 1. Statements needs to include ALL EDITS to ALL PAGES found below. -Please keep the size of the file as close as possible to the original. The original is 146KB so best we can keep file size down. AND MAKE sure we don't lose any quality. Nobody can know document was edited. SO have to be perfect. -PDF can never look edited. Has be identical to original. -I've attached ORIGNAL PDF and PDF SCREENSHOTS with my edits on it. You can see the numbers and where to specifically edit. PLEASE DO GREAT JOB . . .

11

37. Attached to the above email was a billing statement for the Credit Card, and **ARRINGTON** requested that specific edits be made to particular purchases to conceal the vendor and the nature of the purchase.

18 U.S.C. § 1349

## COUNTS TWO AND THREE
(Wire Fraud)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 6 and 8 through 37 of Count One of this Indictment are re-alleged and incorporated herein by reference.

2. On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

**CHAD ARRINGTON, a/k/a "Chad Focus,"**

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

3. For the purpose of executing the scheme to defraud, the defendant did knowingly transmit and cause to be transmitted in interstate commerce, by means of a wire communication, certain writings, signs, signals, pictures and sounds as set forth below:

| COUNT | DATE | WIRE TRANSMISSION |
|---|---|---|
| 2 | 06/15/2017 | A wire transfer of $86,320.71 from Company 1's account at PNC Bank in Maryland to American Express in Arizona as payment for the outstanding balance on **ARRINGTON**'s Credit Card Billing Statement with a Closing Date of 05/29/2017. |
| 3 | 08/30/2018 | A wire transfer of approximately $99,999.99 from Company 1's account at PNC Bank in Maryland to American Express in Arizona, as partial payment for the outstanding balance on **ARRINGTON**'s Credit Card Billing Statement with a Closing Date of 08/28/2018, which was one of eleven wire transfers on this date from Company 1's account to American Express, totaling approximately $1,089,325.12. |

18 U.S.C. §§ 1343

13

## COUNTS FOUR THROUGH SEVEN
### (Aggravated Identity Theft)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 6 and 8 through 37 of Count One of this Indictment are re-alleged and incorporated herein by reference.

2. On or about the dates listed below, in the District of Maryland and elsewhere, the defendant,

**CHAD ARRINGTON, a/k/a "Chad Focus,"**

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, that is, **ARRINGTON** transferred, possessed, and used the name and signature of his supervisor at Company 1 on the documents set forth below during and in relation to the felony charged in Count One, that is, Conspiracy to Commit Wire Fraud, 18 U.S.C. § 1349.

| COUNT | DATE | TRANSFER, POSSSESION AND USE OF IDENTIFICATION |
|---|---|---|
| 4 | On or about 05/23/2016 | An American Express billing statement with a Closing Date of 04/28/2016, on which **ARRINGTON** forged the signature of his supervisor. |
| 5 | On or about 06/28/2016 | An American Express billing statement with a Closing Date of 05/28/2016, on which **ARRINGTON** forged the signature of his supervisor. |
| 6 | On or about 08/12/2016 | An American Express billing statement with a Closing Date of 07/28/2016, on which **ARRINGTON** forged the signature of his supervisor. |
| 7 | On or about 06/15/2017 | An American Express billing statement with a Closing Date of 05/29/2017, on which **ARRINGTON** forged the signature of his supervisor. |

18 U.S.C. §§ 1028A(a)(1), (c)(5); 18 U.S.C. § 2

14

## FORFEITURE ALLEGATION

The Grand Jury for the District of Maryland further finds that:

1. Pursuant to Federal Rule of Criminal Procedure 32.2, notice is hereby given to the defendant that the United States will seek forfeiture as part of any sentence in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), in the event of the defendant's convictions under Counts One through Seven of this Indictment.

2. As a result of the offenses alleged in Counts One through Seven, the defendant,

**CHAD ARRINGTON, a/k/a "Chad Focus,"**

shall forfeit to the United States any property, real and personal, which constitutes and is derived from proceeds traceable to the violations, including but not limited to the following: a Money Judgment in the amount of at least $4,142,435.31.

### Substitute Assets

3. If, as a result of any act or omission of the defendant, any proceeds subject to forfeiture:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) to seek forfeiture of any other property of said defendant.

18 U.S.C. § 981(a)(1)(C)
21 U.S.C § 853

28 U.S.C. § 2461(c)

*Robert K Hur*/DEH
Robert K. Hur
United States Attorney

A TRUE BILL:

SIGNATURE REDACTED     Date: May 29, 2019

Foreperson

16