```
 1                 IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF MARYLAND
 2                          NORTHERN DIVISION

 3   UNITED STATES OF AMERICA,        )
                                      )
 4           Plaintiff,               )
         vs.                          )
 5                                    ) CRIMINAL NO.:
     CHAD ARRINGTON,                  ) 1:19-cr-00264-RDB-1
 6                                    )
             Defendant.               )
 7   _____)

 8
                                        Baltimore, Maryland
 9                                      May 05, 2021
                                        2:00 p.m.
10
                         TRANSCRIPT OF PROCEEDINGS
11                          SENTENCING HEARING
                  BEFORE THE HONORABLE RICHARD D. BENNETT
12                          Courtroom 5D

13
     For the Plaintiff:
14
         Mary Setzer, Esquire
15       Matthew P. Phelps, Esquire
           Assistant U.S. Attorneys
16

17   For the Defendant:

18       Andrew R. Szekely, Esquire
         Kirstin M. Hopkins, Esquire
19

20   Also Present:  Manisha Garner, Probation;
         Special Agents Michael Lewis and Courtney Richardson, FBI
21
         Proceedings recorded by mechanical stenography, transcript
22   produced by computer.

23   _____

24                     Patricia G. Mitchell, RMR, CRR
                        Federal Official Court Reporter
25                      101 W. Lombard Street, 4th Floor
                          Baltimore, Maryland 21201
```

```
 1                   P R O C E E D I N G S

 2          (2:19 p.m.)

 3          THE COURT:  Good afternoon, everyone.  This is

 4  calling the case of United States v. Chad Arrington, criminal

 5  number RDB-19-0264.  The defendant was the only defendant

 6  indicted in a seven-count Indictment in this case, and he

 7  entered a plea of guilty before me on February 3rd of 2020 to

 8  Count 1, charging with conspiracy to commit wire fraud.  We are

 9  here for sentencing today.

10          If counsel would identify themselves for the record,

11  please.

12          MS. SETZER:  Yes, Your Honor, good afternoon.  Mary

13  Setzer and Matthew Phelps on behalf of the Government.  We're

14  joined by Special Agents Courtney Richardson and Michael Lewis

15  from the --

16          THE COURT:  Yes, Ms. Setzer, nice to see you.

17  Another assistant U.S. attorney with you, you said?

18          MS. SETZER:  Yes, Matthew Phelps.

19          THE COURT:  Mr. Phelps, nice to see you.

20          MR. PHELPS:  Good afternoon, Your Honor.  Thank you.

21          THE COURT:  I know, Ms. Setzer, you have been before

22  me before; it's been a while.  Mr. Phelps, I'm not sure if you

23  have been before me before, but it's nice to have you.

24          MR. PHELPS:  Thank you, Your Honor.

25          THE COURT:  And the case agent here is?
```

1          MS. SETZER:  Special Agent Courtney Richardson and

2  she's joined by Special Agent Michael Lewis, both from the

3  FBI.

4          THE COURT:  Thank you very much and welcome to all of

5  you.  On behalf of the defendant.

6          MR. SZEKELY:  Thank you.  Your Honor, preliminarily,

7  would you prefer I address the Court seated or standing?  I'm

8  not certain what the COVID protocols are.

9          THE COURT:  We're getting back to normal so we can

10  stand.

11          MR. SZEKELY:  Thank you, Your Honor.  Andrew Szekely

12  and Kirstin Hopkins on behalf of Mr. Arrington.  Mr. Arrington

13  is standing to my immediate right this afternoon.

14          THE COURT:  Yes, Mr. Szekely, nice to see you.

15  Ms. Hopkins, nice to see you in person.  Getting back to normal

16  here, not quite but we're getting there.

17          Good afternoon to you, Mr. Arrington.

18          THE DEFENDANT:  How are you doing today?

19          THE COURT:  Good afternoon to you, sir.

20          MR. SZEKELY:  Also, Your Honor, if I may, we're also

21  joined by Mr. Arrington's mother, his father, his stepmother

22  and stepfather, and outside in the hallway, who could not come

23  in because of seating restrictions, are Mr. Arrington's sister,

24  aunt and grandmother.  So he has a number of family members

25  here today, and others on the public access line.

1          THE COURT:  Yes, we had some notice of additional

2     persons, and I thought the Marshals Service was trying to

3     arrange video capability in another courtroom.  I'm not sure if

4     that was able to be done in time or not.

5          MR. SZEKELY:  I did not, though I certainly

6     appreciate the effort.  Thank you very much, Your Honor.

7          THE COURT:  That's fine.  Welcome to all of you here.

8     Ms. Setzer, there has been notice to the victims here, the

9     defendant's former employer.  I have the victim impact

10    statement from Money Map Press.  There's obviously been a

11    notice to that victim, as well as I believe to American

12    Express; is that correct?

13         MS. SETZER:  Yes, Your Honor.

14         THE COURT:  I do have an impact statement from Money

15    Map Press.  I don't have anything from the -- from American

16    Express.

17         We're ready to proceed here, Mr. Arrington.  If

18    you'll please stand for a few minutes here, sir.  I want to

19    verify -- I'll note, by the way, U.S. Probation Officer Tracy

20    Schrum prepared the presentence investigation report but she is

21    not here, and we are joined in her place by Manisha Garner.

22    Ms. Garner, nice to see you.

23         PROBATION OFFICER:  Nice to see you as well, Judge.

24         THE COURT:  Nice to see you as always.  Hold on one

25    second, please.

1          Now if you'll please stand, Mr. Arrington.  I want to
2     verify, sir, that you've had an opportunity to review the
3     presentence investigation report in this case.  Have you had an
4     opportunity to review it?
5          THE DEFENDANT:  Yes, sir.
6          THE COURT:  Keep the microphone close to you.  You
7     don't need to bend over.  Approximately how many times have you
8     reviewed the presentence report with Mr. Szekely, the Assistant
9     Federal Public Defender, and with Ms. Hopkins?
10         THE DEFENDANT:  At least four or five.
11         THE COURT:  Are you satisfied you've had sufficient
12    amount of time to go over it with them?
13         THE DEFENDANT:  Yes, sir.
14         THE COURT:  There are no corrections or objections by
15    the Government; is that correct, Ms. Setzer?
16         MS. SETZER:  That's correct, Your Honor.
17         THE COURT:  Mr. Szekely, there are no corrections or
18    objections to the report per se, but you reserve the right, as
19    you've noted in your submission to the Court, Paper No. 63, to
20    contend that there's overrepresentation of criminal history,
21    correct?
22         MR. SZEKELY:  Your Honor, at that time the parties
23    believed Mr. Arrington had no criminal history that would
24    score.  We weren't certain.  That was reserved in the event
25    something occurred --

1          THE COURT:  Okay.  I made a note he has the lowest

2     Criminal History Category of I.

3          MR. SZEKELY:  Which we anticipated but we were just

4     reserving that opportunity in case we all missed something.

5     We're not presenting any such argument today --

6          THE COURT:  So you're not trying to argue for zero or

7     minus one then, correct?

8          MR. SZEKELY:  Not trying to argue for zero or minus

9     one, Your Honor.

10          THE COURT:  That's fine then.  With that, let me just

11     go over the federal process here in federal court,

12     Mr. Arrington.  I know I went over this with you over a year

13     ago when you pled guilty, but also for the benefit of your

14     mother and father, stepfather, stepmother, and for the benefit

15     of your sister, aunt, anybody else in the family here.  The

16     federal sentencing process is a little bit more formal than

17     state court.  Essentially there are two key opinions of the

18     United States Supreme Court issued in the last 16 years that

19     outline the process for sentencing in federal court.

20          First of all, in the case of *United States v. Booker*

21     in January of 2005, the United States Supreme Court upheld the

22     constitutionality of the Federal Sentencing Guidelines which

23     were referenced in paragraph 5 of your plea agreement letter

24     when you pled guilty back last February of 2020.  That was

25     introduced as Government Exhibit 1.  The Supreme Court upheld

1    the constitutionality of those guidelines in the *Booker* case in

2    January of 2005 with the deletion of two particular sections of

3    the guidelines which had previously rendered the guidelines

4    mandatory.

5            The Supreme Court specifically noted that with the

6    deletion of those mandatory provisions, the balance of the

7    Federal Sentencing Reform Act were constitutional, but as a

8    result of its opinion, the guidelines were rendered effectively

9    advisory and were to be applied in an advisory context, meaning

10   that federal judges, while not bound to apply those guidelines,

11   must still consult them and take them into account when

12   imposing the sentence.  Do you understand that?

13           THE DEFENDANT:  Yes, sir.

14           THE COURT:  That is still subject to review by courts

15   of appeals for unreasonableness.  Here in this case, paragraph

16   10 of the plea agreement letter indicated both you and the

17   Government waived appeal of any lawful sentence, which means as

18   long as it's within the lawful parameters of the statute, the

19   Government waives appeal of the sentence if the Government

20   feels I've been too lenient.

21           Conversely, as long as it's within the parameters of

22   the statute, you waive appeal if you think I've been too harsh.

23   Do you understand that?

24           THE DEFENDANT:  Yes, sir.

25           THE COURT:  Under the approach adopted by the Supreme

1   Court, other factors are to be considered as well under

2   Section 18 United States Code, Section 3553(a).  Those factors

3   that I'll consider here today include your personal history and

4   characteristics, the nature and circumstances of the offense,

5   the sentences imposed upon similarly situated individuals.  All

6   of those factors come into play here as well when I impose the

7   sentence.

8           I said there were two key opinions of the United

9   States Supreme Court.  The second of those two opinions was the

10   case of *Gall v. the United States*, decided about three years

11   after the *Booker* case in December 2007, in which the Supreme

12   Court of the United States provided further instruction to

13   federal judges.  Again, this applies only to federal court, not

14   state court.  Specifically, the Supreme Court admonished

15   federal judges that the Federal Sentencing Guidelines are not

16   presumed to be reasonable.  They're just a starting point in a

17   multistep process pursuant to which first there's a calculation

18   of the advisory guideline range, and then there's a

19   consideration of other factors apart from the guidelines, those

20   factors I just mentioned; the goal being to impose a sentence

21   which is sufficient but not greater than necessary to achieve

22   the goals of sentencing.

23           So that will be the process here.  We're going to go

24   over the guideline range.  I don't think there's any dispute

25   about the guideline range.  Then we'll consider other factors

1  apart from the guidelines.  I'm going to hear from Government

2  counsel arguing in terms of allocution, following up on the

3  memorandum submitted by the Government.

4          I'm going to hear from your counsel, following up on

5  the memorandum which was submitted on April 28 on your behalf.

6  And you will have an opportunity to speak on your own behalf

7  and -- if you so desire.  You don't have to, but you're

8  certainly welcome to.

9          For that matter, Mr. Szekely, if any family members

10 want to come forward, they're welcome to.  The Government

11 doesn't have any objection, Ms. Setzer, if that's the case?

12         MS. SETZER:  No, Your Honor.

13         THE COURT:  So if anyone wants to speak, a member of

14 your family wants to speak, they're welcome to as well.  So

15 that will be the process here today.

16         A few other housekeeping matters.  Paragraph 73 of

17 the presentence investigation report noted some medication that

18 you take with respect to high blood pressure.  Do you take

19 medication for high blood pressure, sir?

20         THE DEFENDANT:  Yes, sir.

21         THE COURT:  Did you take it today?

22         THE DEFENDANT:  Yes, sir.

23         THE COURT:  You take it every day?

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Is that having any negative effect upon

1    you here today?

2              THE DEFENDANT:  No, sir.

3              THE COURT:  There have also been some issues raised

4    in terms of addiction to Adderall and some anxiety issues.  Did

5    you take any other medication today other than your blood

6    pressure medication?

7              THE DEFENDANT:  Yeah, I took anxiety medicine and

8    also medicine for the bipolar depression.

9              THE COURT:  You take medicine for being depressed and

10   bipolar as well?

11             THE DEFENDANT:  Yes, every day.

12             THE COURT:  Did you take that medication today?

13             THE DEFENDANT:  Yes, sir.

14             THE COURT:  You normally take that every day as well?

15             THE DEFENDANT:  Yes, sir.

16             THE COURT:  Is that having any negative effect upon

17   you?

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Mr. Szekely and Ms. Hopkins, are you both

20   confident that your client is competent to proceed with

21   sentencing here today?

22             MR. SZEKELY:  Yes, Your Honor.

23             THE COURT:  Now the other thing I want to go over

24   with you, Mr. Arrington, are the procedures required by the

25   PROTECT Act of 2003 which is a law that was passed by the U.S.

1    Congress in that year, and among the many provisions of the

2    PROTECT Act, there are provisions with respect to federal

3    courts when imposing sentences in federal criminal cases.

4    Specifically, the PROTECT Act of 2003 requires that the chief

5    judge of each federal court in the United States ensure that

6    within 30 days of the imposition of sentence, that certain

7    documents go over to the U.S. Sentencing Commission in

8    Washington.

9          Those documents include the Judgment & Commitment

10   Order which I'll be preparing with the aid of Ms. Carter, the

11   deputy clerk of court here in the courtroom; the statement of

12   reasons for the sentence imposed which shall include the reason

13   for any departures from the otherwise applicable guideline

14   range; a copy of the plea agreement in the case; the

15   seven-count Indictment as to which you pled guilty in Count 1;

16   the presentence investigation report prepared by Ms. Schrum;

17   and any other information the Sentencing Commission finds

18   appropriate.

19         All of that information goes over to the U.S.

20   Sentencing Commission in Washington within the next 30 days.

21   The chief judge of this court issued an administrative order in

22   the year 2003 directing the U.S. Probation Office, Ms. Garner's

23   office, to see that that information goes over to Washington.

24         That means, Mr. Arrington, that some of these

25   documents might be subject to review by other public officials

1    over in Washington or perhaps even by members of the public.

2            For a long period of time, it has been the policy

3    here in this court that there is a section marked defendant

4    characteristics in all presentence investigation reports

5    containing confidential family information, medical history,

6    medical issues, names of relatives.  All of that information is

7    in that section marked defendant characteristics, which is

8    part C of the presentence report.  Going back to 2004 to an

9    administrative order passed then and revised in 2015, pursuant

10   to an administrative order of this court, that section is

11   sealed.  I have looked at it.  Another judge of this court

12   could look at it, if he or she so chose, and members of the

13   U.S. Sentencing Commission in Washington may review it, but no

14   one else is permitted to see it absent further order of this

15   court.

16            Do you understand that?

17            THE DEFENDANT:  Yes, sir.

18            THE COURT:  In your case, part C begins in paragraph

19   63 on page 14 of the presentence investigation report and goes

20   over to paragraph 99 on page 20 so that portion is sealed.

21            I said the first step here -- to all other extent, I

22   would note the requirements of the PROTECT Act are still

23   mandated and to be complied with.

24            I said the first step here this afternoon is a

25   calculation of the advisory guideline range as to which there's

1   no dispute, and that is set forth on page 12, starting at

2   paragraph 43, with respect to the offense of conspiracy to

3   commit wire fraud as charged in Count 1 to which you pled

4   guilty and as to which you're being sentenced here today, there

5   is a base offense level of 25 as set forth in guideline Section

6   2B1.1(a)(1) with a base offense level of 7 and then an addition

7   of some 18 levels in light of the monetary loss caused here.

8   Indeed, the loss here is deemed to have exceeded $3.5 million

9   but was less than 9.5 million, so there's a total offense level

10  of 25.

11          You're being given a two-level downward adjustment

12  for your acceptance of responsibility, and the Government is

13  now moving for a third level.  Is that correct, Ms. Setzer?

14          MS. SETZER:  That's correct, Your Honor.

15          THE COURT:  That will be granted, so there's a total

16  offense level of 22 in this offense, Mr. Arrington.  That's

17  exactly what was anticipated in the plea agreement letter of

18  December 19, 2019, which was introduced as Government's

19  Exhibit 1 at the time of your guilty plea on February 3rd of

20  last year, 2020, just before the pandemic hit.

21          With respect to your criminal history, you're at the

22  lowest criminal history category, as I've already noted to

23  Mr. Szekely.  You had two charges as to which both were

24  dismissed, so there was no disposition.  Two assault charges,

25  one in 2003 and one in 2018, both in the District Court of

1    Maryland for Baltimore County as to which there was no

2    adjudication.  There is also a charge in the District Court of

3    Maryland for Baltimore County for telephone misuse, and that

4    had to do with a dispute with Danielle Smith, the mother of one

5    of your children.

6         So with that -- and there are no criminal history --

7    actually your only child, mother of your child.  With that,

8    there are no other guideline issues here.  And with a total

9    offense level of 22 and a Criminal History Category of I, there

10   is an advisory guideline range of 41 to 51 months'

11   incarceration.  Again, I don't presume that that range is

12   reasonable, but that is the recommendation of the sentencing

13   guidelines.

14        There are no disputed matters for me to address, and

15   Mr. Szekely has acknowledged the issue of overrepresentation of

16   criminal history is not before me any longer.

17        With that, you may be seated.  I'll first give

18   Ms. Setzer, the assistant U.S. attorney, an opportunity to

19   speak on behalf of the Government.  And then I will recognize

20   Mr. Szekely for remarks on your behalf, and I will give you an

21   opportunity to speak, Mr. Arrington.

22        Ms. Setzer, the first step here I think for the

23   Government is that the Government is now moving to dismiss

24   Counts 2, 3, 4, 5, 6 and 7 of the Indictment, correct?

25             MS. SETZER:  That is correct, Your Honor.

1          THE COURT:  Consistent with the plea agreement, those

2     counts will be dismissed, and the defendant will be sentenced

3     on Count 1.  Pursuant to paragraph 9 of the plea agreement

4     letter, the Government was free to recommend any sentence which

5     it felt was reasonable, as is the defendant entitled, and the

6     Government has submitted a sentencing memorandum, Paper No. 60,

7     on April 21.  I have reviewed it.

8          With that, I'll be glad to hear from you, Ms. Setzer.

9          MS. SETZER:  Thank you very much, Your Honor.  As

10    indicated in the Government sentencing memorandum, we are

11    requesting a sentence of incarceration of 48 months in the

12    Bureau of Prisons to be followed by three years of supervised

13    release.  In terms of restitution, we also discussed in that

14    memorandum and it was agreed in the plea agreement that the

15    total restitution due is $4,142,435.31.  I did provide to madam

16    courtroom deputy the addresses for the individuals that the

17    restitution is to be paid to.  There are two insurance

18    companies, as well the victim company in this matter --

19          THE COURT:  Yes.

20          MS. SETZER: -- Money Map Press, so those addresses

21    were provided to the courtroom deputy prior to beginning

22    today's proceeding, Your Honor.

23          I just want to elaborate on a few comments the

24    Government had made in our sentencing memorandum without sort

25    of being redundant and repeating every single argument.  As the

1    Court indicated, you did read our sentencing memorandum.  One

2    thing that I think bears repeating and emphasizing, given that

3    the defense had focused a lot in their memoranda about the

4    overrepresentation of the loss amount in terms of the

5    guidelines in fraud offenses is that this case involves the

6    defendant's conduct that was pervasive and regularly occurring

7    over a period of several years, Your Honor.  This was not a

8    month in time where he was committing fraud.

9         It was not something consistent with, as we'll be

10   talking about mental health, a manic episode, a brief period of

11   time, a couple days, a month or even a couple of months, or

12   even sporadic, in that it would be consistent with the

13   defendant experiencing some manic episode and undergoing poor

14   decision-making.

15        In fact, this occurred on a regular basis monthly,

16   month after month for a period of several years.  With that

17   being said, Your Honor, the guidelines in this case are

18   indicative not only of the defendant's conduct and the loss

19   that is directly attributable to his actions, but how long it

20   was occurring.

21        What I'll also say is some of the quotes that the

22   defense had cited in their memoranda are a little bit taken out

23   of context or applying to different situations.  For example,

24   there was a case that was cited, Shusterman, that was Judge

25   Bredar.  I'm not claiming at all that the defense was

1    misrepresenting anything in quotes --

2              THE COURT:  I understand.

3              MS. SETZER:  -- I just think obviously there are

4    distinctions to be made here.  In that case Judge Bredar talked

5    a lot about how he had bigger problems as the loss amounts

6    increased with the guidelines.  That case was, I think, $242

7    million of fraud.  But what's more is in that case, Your Honor,

8    Judge Bredar talked about, he said at one point:  Shouldn't

9    there be some additional factor in there which weighs in the

10   notion that somebody was gambling essentially to get a 39

11   percent return on an asset?  Is there a place for consideration

12   of some sort of status of the victim, some expectation of the

13   downside consequences of highly risky investing?

14             I say that to point out that Judge Bredar was

15   commenting in the context of the loss amount and the guidelines

16   about other factors that should play in that are not taken into

17   account with the guidelines for fraud such as victim behavior.

18   Of course, the victim in that case obviously was still a victim

19   and Judge Bredar recognized them as such, but they were

20   engaging in some sort of risky investing behavior.  So he

21   talked a lot about that.

22             What I will also note, there is a distinction from

23   this case between cases where there are several defendants

24   involved in a fraud scheme, or co-conspirators, whether charged

25   or uncharged, and they are responsible for the foreseeable loss

1    amount regardless of whether they directly engaged in that

2    particular fraud or directly knew, had actual knowledge about

3    it, but they could be responsible for a much larger amount of

4    intended loss.  That is not the situation with this case.

5          We have this sole defendant in this case,

6    Mr. Arrington, who despite there being referenced

7    co-conspirators, the defendant was engaging in this fraud

8    himself for his own benefit and then sort of directing the

9    co-conspirators to aid in that fraud, Your Honor.

10          So it's not a situation where -- some of these cases

11    sort of talk about where there could be a defendant responsible

12    for a $240 million loss or some high loss amount, which they

13    are responsible for; however, they weren't directly engaged in

14    every single fraudulent transaction.  So the Government just

15    wanted to point that out to the Court, as the Court is aware

16    this case is very distinguishable.  And while there may be some

17    cases where that is a valid argument -- I'm not commenting on

18    any particular case or whatnot -- this is not the case where

19    the loss amount in the guidelines is inappropriately enhancing

20    the defendant's guidelines.  In fact, his guidelines in this

21    case the Government feels are appropriate and do warrant a

22    sentence within those guidelines as warranted.

23          What I'll also say is that the Government's

24    recommendation was with careful consideration.  It was not

25    simply because this is a number somewhere within these

1    guidelines so that has to be appropriate.  Of course, that's

2    not the case, and Your Honor started this proceeding by

3    recognizing that, as you always do.  However, this is a case

4    where the defendant was already given the benefit of not

5    pleading to aggravated identity theft in addition, which would

6    carry 24 months consecutive to any other sentence.

7         So that was taken into account with the plea

8    agreement and, you know, what that would make these

9    guidelines --

10        THE COURT:  So the record is clear, if he had been

11   found guilty by a jury as to that count, whatever penalty would

12   be imposed by statute, there would have been an additional

13   two-year sentence required by statute.  I would have had no

14   discretion on that at all.

15        MS. SETZER:  That's correct, Your Honor.  That was

16   Counts 4 through 7 of the Indictment, as Your Honor pointed

17   out.  So that was taken into account with the plea offer that

18   was made, and that was taking into account the defendant's lack

19   of criminal history as we all anticipated, and despite not

20   having a specific diagnosis that we have now of the defendant

21   at the time the plea offer was made, counsel had discussions

22   about potential mental health concerns of the defendant.  So

23   that was taken into account as well, and I was a part of those

24   discussions with my prior co-counsel as well.

25        So with that being said, the Government has put

1  careful consideration into that recommendation of 48 months.

2          The amount of fraudulent behavior that was occurring,

3  the consistency with which it was occurring, and in addition,

4  as I indicated with the aggravated identity theft, the amount

5  of effort to conceal the fraud by forging his supervisor's

6  signature and then submitting these fraudulent accountings to

7  the company so that they did not discover it, was just

8  extremely egregious.  More so than just having charged personal

9  expenses and spent the money.  He was going through efforts,

10  recruiting others to help forge these documents and things like

11  that to conceal this fraud, Your Honor.

12          THE COURT:  The American Express card for his

13  employer essentially amounted to his piggy bank account.  He

14  was just ridding it at his will, so to speak.  Until it was

15  disclosed, it could have gone on to even a higher monetary

16  amount, quite frankly.

17          MS. SETZER:  Exactly, Your Honor.  I think the

18  Government mentioned that in our sentencing memorandum as well.

19  This only ceased because it was discovered and when it was

20  discovered, thankfully, the defendant was immediately released.

21          After he was terminated, he then proceeded to shoot a

22  music video across the street from his employer sort of as a

23  thumbing his nose at them and saying, look, I'm still spending

24  this money and I'm rubbing it in your nose.  Your Honor, that

25  kind of behavior indicates a lack of remorse, a lack of

1  contrition.  Obviously he didn't know he was going to be

2  prosecuted, but he knew he had been terminated and he knew that

3  his fraud had been discovered, and yet he continued to sort of

4  flaunt the money that he had made from making charges at their

5  expense, Your Honor.  So that's very telling.

6          Obviously we anticipate -- and obviously he's

7  accepted responsibility, and we anticipate some level of

8  contrition that he may express today.  However, obviously today

9  is the sentencing day over a year after he entered the plea in

10 this case, Your Honor.  So I think all of these things are

11 extremely relevant as to not only his conduct but his actual

12 remorse prior to judgment day.

13         Your Honor, you indicated you received the victim

14 impact statement that was sent today.  We do have Mr. William

15 Krulak who's here.  He's the attorney for Money Map Press.

16         THE COURT:  Yes.

17         MS. SETZER:  If he could --

18         THE COURT:  Yes, I have read Mr. Krulak's victim

19 impact statement.  Mr. Krulak represents Money Map Press, the

20 former employer of Mr. Arrington.  Mr. Krulak, you're welcome

21 to come forward, sir, if you'd like and address the Court.

22         MR. KRULAK:  Good afternoon, Your Honor.

23         THE COURT:  Good afternoon.  Just for the record here

24 on this, I've been on the bench now over 18 years, but prior to

25 18 years ago, I was a partner to the law firm of Miles and

1    Stockbridge.  Mr. Krulak is a partner there at that law firm.

2    This doesn't create any conflict of interest for me at all, but

3    I think as a matter of complete disclosure, Mr. Krulak was a

4    young associate at that time.  Now he's a young partner.  But

5    he was a young associate at that time.

6             No problems from your point of view on that, is

7    there, Mr. Szekely?

8             MR. SZEKELY:  No, Your Honor.

9             THE COURT:  Doesn't affect me one way or the other.

10   Mr. Krulak, nice to see you.  Step over by the podium there

11   inside the plexiglass.  I'll be glad to hear from you.

12            I've read the impact statement.  I believe you have a

13   copy of it, Mr. Szekely?

14            MR. SZEKELY:  I have a copy, and so the record is

15   clear, I reviewed that with Mr. Arrington this afternoon before

16   we came to court.

17            THE COURT:  Yes.  We'll make sure, Ms. Carter, this

18   becomes Government's Exhibit 2 in this case.  This will become

19   an exhibit here.  I'll give it to you after we finish.  Thank

20   you very much.

21            Mr. Krulak, I'll be glad to hear from you.

22   Welcome.

23            MR. KRULAK:  Thank you, Your Honor.  Good to see you

24   this afternoon, Judge.  I think the memo that I prepared and

25   submitted through the U.S. Attorney's Office adequately covers

1    sort of the narrative of what my client experienced because of

2    Mr. Arrington's behavior.  To pick up on two points, though,

3    that I think sort of amplify the circumstances, as noted in

4    Assistant U.S. Attorney Setzer's comments just a few moments

5    ago, this fraudulent behavior -- I think Your Honor picked up

6    on this as well -- was ongoing, and, in fact, I think the only

7    way to describe it accurately was it was accelerating.

8            The final month in which this was discovered, there

9    was over a million dollars charged on that American Express

10   card.  If one were to go back and look at the months and year

11   preceding that, what began as a fairly modest fraudulent

12   behavior became more and more excessive and unbridled over the

13   passage of time.

14           So it was really just fortuitous that my client

15   discovered what Mr. Arrington was up to, and one might imagine

16   that had this gone undiscovered for an additional month or two

17   or year, the amount that could have been fraudulently obtained

18   by Mr. Arrington could have been multiples of what he obtained.

19           The other point that Assistant U.S. Attorney Setzer

20   noted was the sort of brazen nature of this and whether, even

21   after he had been terminated -- as I leave out of the city, I

22   drive up Charles Street through Mount Vernon and get on the JFX

23   right across from the train station.  Full-size billboard at

24   that time after Mr. Arrington had been terminated had his

25   picture and was flaunting his new fledgling hip-hop career as

1    Chad Focus.  That was a daily reminder --

2            THE COURT:  The billboard was in the name of Chad

3    Focus, F-o-c-u-s, not Chad Arrington, correct?

4            MR. KRULAK:  Correct, that was Mr. Arrington's alter

5    ego.  I think that sort of illustrates the brazenness of this

6    fraudulent behavior.  I've not been party to the claims of

7    mental illness and certainly that will be given whatever

8    consideration is necessary, but the extent of time in which

9    this behavior persisted I think illustrates...

10           So, Your Honor, if you have any questions based on

11   what you've read, I'd be happy to address --

12           THE COURT:  I do note in addition to the -- just the

13   raw essentially embezzlement of all these funds and supporting

14   his efforts to publicize himself, I do note as a result of this

15   that your client, Money Map Press, has not only had insurance

16   coverage issues since then in terms of cost to the insurance

17   company here, but ten of his former colleagues at Money Map

18   Press have had their annual salaries cut dramatically because

19   of these losses.  They're not making as much money as they did.

20   We're not just talking about harm to a corporate entity and an

21   insurance company paying benefits.  We're talking about costs

22   to colleagues every payday.

23           MR. KRULAK:  Very real human costs.  Obviously --

24   maybe not obviously, one might not be surprised to learn that

25   there was great recrimination within the organization --

1          THE COURT:  I'm sure there was.

2          MR. KRULAK:  -- who was responsible, interaction

3   between the accounting department and the supervisor.  There

4   were people who were terminated because of their role in not

5   discovering this fraud earlier.  As I noted in the memo, a

6   number of people, a large performance of their compensation was

7   performance bonuses.  Bonus not in the sense of getting

8   something extra but that you were paid essentially based on

9   revenue you were responsible for.  As I said, there were a

10  number of people who had substantial financial hits because of

11  this.

12          This is a small local company that had entrusted

13  Mr. Arrington, and there's still a great deal of pain with

14  those people now.

15          THE COURT:  Thank you very much, Mr. Krulak.  No

16  questions from you, are there, Mr. Szekely?

17          MR. SZEKELY:  No, Your Honor, thank you.

18          THE COURT:  Thank you very much, Mr. Krulak.

19          MR. KRULAK:  Thank you, Your Honor.  Good to see you.

20          THE COURT:  Ms. Setzer, anything else?

21          MS. SETZER:  Just a few additional comments.  In

22  terms of restitution, of course, the restitution should be paid

23  to the victim first prior to being paid to the insurance

24  companies.

25          THE COURT:  Yes.

1              MS. SETZER:  We did indicate in our sentencing

2     memorandum that we're requesting -- obviously the Court is

3     going to set a payment schedule, $200 a month.  I would

4     comment, based on something the defense had said in their

5     sentencing memorandum, that the defendant has been able to

6     obtain, I think it sounds like, a few other jobs while this

7     sentencing proceeding -- while the case was pending and while

8     this sentencing was pending.  So I know there were a number of

9     requests for modifications of pretrial conditions because he

10    wanted more leeway in terms of conducting his business and

11    engaging in that employment.  I think even at one point he had

12    been promoted to do some of the marketing at one of those jobs.

13             We point that out for two reasons, one, to say that

14    the point that he's been punished enough sort of by the press

15    of this case and that there shouldn't be further punishment in

16    terms of incarceration over a year is just not consistent with

17    the fact that he's gotten employment, even been promoted at one

18    of those jobs.  I don't know if "promotion" is the proper word,

19    but there were requests to have alterations to pretrial

20    conditions so that he could engage in some marketing for one of

21    those firms.  So, you know, I just think that that argument

22    falls flat.

23             But also we point that out to say that we're

24    requesting $200 a month to be paid for the period of supervised

25    release.  We think that is reasonable based on the employment

1  that he's been able to obtain while the case was pending and

2  that we anticipate that he will be able to obtain.

3          THE COURT:  Clearly that will not pay all the

4  restitution of $4.1 million.  The balance will still remain due

5  and owing, will be dealt with by the financial litigation unit

6  of the U.S. Attorney's Office --

7          MS. SETZER:  Exactly, Your Honor.

8          THE COURT:  -- in terms of a continued payment.  So

9  it's not like Mr. Arrington is home-free after his period of

10  supervised release is up.  This will be a matter he'll have to

11  continue to live with for quite a long time.  It will take a

12  long time to pay back $4 million.

13          MS. SETZER:  Yes, Your Honor.  Finally, we did file a

14  preliminary order of forfeiture.  The U.S. Attorney's Office

15  had been discussing it with defense counsel, and we got their

16  consent just prior to this proceeding --

17          THE COURT:  Just filed that today then?

18          MS. SETZER:  We did, yes, Your Honor.

19          THE COURT:  Because I hadn't seen it, I'm sorry.

20          MS. SETZER:  No, that's my apologies.

21          THE COURT:  That's all right.

22          MS. SETZER:  We had been discussing that, and we

23  didn't want to file it if they consented or objected and not

24  notify the Court of their position.  So there was consent on

25  that, that was filed today --

1          THE COURT:  Do you have a copy of that or does the

2     clerk have a copy of that?

3          MS. SETZER:  It was just filed while I was walking

4     over here.

5          THE COURT:  Can you try and download that now,

6     Ms. Carter, if you can?

7          That forfeiture order is for how much?  What assets,

8     what is the totality of the forfeiture order that I'm entering

9     here?

10         MS. SETZER:  It's the full amount --

11         THE COURT:  Of $4.1 million?

12         MS. SETZER:  Yes.  I have to look --

13         MR. SZEKELY:  Your Honor, it's less -- it's a money

14    judgment in the amount of approximately $1.5 million.

15         THE COURT:  I'm trying to clarify what is being

16    forfeited.

17         MR. SZEKELY:  It's a money judgment sort of targeting

18    the unearned income Mr. Arrington obtained.

19         MS. SETZER:  Yes, I think that's fair to say.

20         THE COURT:  That's fine.

21         MR. SZEKELY:  If you're done?

22         MS. SETZER:  Yes.

23         MR. SZEKELY:  Your Honor, there's one other matter

24    just on restitution.  There's some property that is in the

25    Government's possession.  Some of it is in salable condition,

1   and any proceeds of that will be credited to the restitution.

2             MS. SETZER:  That's correct.

3             THE COURT:  That's fine.  We'll have a restitution

4   order of $4,142,435.31 with payment of $200 a month during the

5   period of supervised release.  It will note that any sale or

6   property forfeited will be credited against that restitution.

7   Remind me, Ms. Carter, to put that in the language of the

8   Judgment & Commitment Order.

9             THE CLERK:  Yes, Judge.

10            THE COURT:  Thank you very much, Ms. Setzer.  Thank

11  you, Mr. Krulak.

12            I now recognize Mr. Szekely for remarks on behalf of

13  Mr. Arrington.  I've read your sentencing memorandum, Paper

14  No. 63, that was filed on April 28, and I'll be glad to hear

15  from you.

16            MR. SZEKELY:  Thank you, Your Honor.  A sentence of

17  12 months and one day in this case is reasonable because it

18  balances the competing factors before the Court today.  The

19  Court has just indicated that it has reviewed my sentencing

20  memorandum.  It's quite lengthy, which I do apologize for the

21  length of that --

22            THE COURT:  Actually by public defender standards,

23  it's just about normal.

24            MR. SZEKELY:  I'll pass that on to my colleagues.

25            THE COURT:  I don't think I've ever gotten a

1  sentencing memorandum less than 15 pages from the public

2  defender's office, so you're right in the ballpark.

3            MR. SZEKELY:  I'm not going to recount everything,

4  Your Honor, clearly, but I do want to highlight a few points

5  and contrast some things with the Government.  Mr. Arrington

6  does intend to allocute and I think on the topic of remorse, I

7  believe those words are best left to Mr. Arrington to say.  I'm

8  not addressing that now not because it's not important, not

9  because it's not present in this case, but because I think

10 Mr. Arrington should speak directly to that.

11           But I want the Court to understand that Mr. Arrington

12 has a keen and deep awareness of the gravity of his actions.

13 We just heard from Mr. Krulak.  Prior to court today, the

14 Government provided the written victim impact, and

15 Mr. Arrington came to my office in advance of the proceeding

16 today, and Ms. Hopkins and I reviewed that with Mr. Arrington.

17 And ten people have had their pay reduced which is clear harm

18 to those people.  And we're, I think appropriately, spending

19 most of this proceeding discussing Mr. Arrington, but he's

20 keenly aware how his offense impacted and hurt others, and

21 those ten people are people who Mr. Arrington knew for the most

22 part.  We don't have their names but it's a small organization.

23 There's a good chance Mr. Arrington knew them and he's

24 remorseful for that.  He'll speak to the Court about that, but

25 also it's something he'll carry with him.

1          Mr. Arrington and I also spoke with Ms. Hopkins at

2     some lengths about what is our sentencing recommendation going

3     to be.  During that conversation which was a couple weeks prior

4     to today's proceeding, Mr. Arrington said something that I sort

5     of noted and I think it's noteworthy, that when Mr. Arrington

6     said, look, Mr. Szekely, when I signed this plea, you told me

7     what the guidelines were going to be.  I knew there were no

8     guarantees of what my sentence would be, but I pled guilty

9     because it was the right thing to do in this case.

10          I don't want this to sound like I'm saying we believe

11     a sentence in excess of the sentence we're asking for is

12     reasonable because our position is it is not.  But it does

13     demonstrate that Mr. Arrington does have an understanding of

14     the gravity of the seriousness of not just this offense and not

15     just the effect the offense will have on his life, but on the

16     effect it has had on others.

17          I'm not going to make --

18          THE COURT:  Not only that, Mr. Szekely, but it's very

19     frustrating here that, given all the issues that face the city

20     of Baltimore, it's very distressing to see a young man get a

21     degree in mass communications from a respected college,

22     McDaniel College, to play basketball, be doing all the right

23     things and have it all turn out to be a fraud.  It really is

24     very distressing when the young people of this city need a role

25     model to show what results from hard work and getting a college

1   degree and playing sports, and instead the whole thing blows up

2   and is all a fraud.  It really -- there isn't just a negative

3   effect upon ten co-employees; there's a negative effect upon

4   young people who saw the billboards, young people who saw the

5   purported success of Chad Focus, and young people who have

6   those kinds of dreams and realize it's all based upon fraud.

7           It's not that he doesn't have talent, but you can't

8   finance your talent at the expense of somebody else and

9   buttress yourself up.  So there's a real impact on the

10  community here, and it isn't just his ten co-employees.

11          MR. SZEKELY:  I understand and appreciate that, Your

12  Honor.  I just want to -- when the Court said it was all a

13  fraud, certainly the conduct in this case was fraudulent, and

14  that's why Mr. Arrington has entered the plea that he has and

15  why we're here today.  But in terms of Mr. Arrington's -- the

16  other parts of Mr. Arrington's life, his --

17          THE COURT:  I don't mean his whole life is a fraud.

18  I'm just saying in terms of the ticket sales --

19          MR. SZEKELY:  That's fine, I just wanted to be

20  clear --

21          THE COURT:  -- posturing on the social media, all of

22  which was a fraud.  He's self-financing creating an illusion,

23  and that's what's very disappointing.  It would be encouraging

24  to watch someone succeed such as this.  Instead, it's all been

25  buttressed by falsehoods.

1          MR. SZEKELY:  Your Honor, I was going to address this

2    later, but maybe now is the time it makes sense to address it.

3    The Government had said something -- I don't want to

4    mischaracterize what the Government said, but effectively that

5    the defense has argued that because the case was in the press,

6    that that is punishment.  Though that has certainly been

7    difficult for Mr. Arrington and even more difficult for his

8    family members to see that in the news, the effect of the press

9    in this case I think is most apparent in the deterrent

10   effect.

11         So, Your Honor, we talk regularly in this courthouse

12   about specific and general deterrence.  In our typical drug

13   case or typical gun case that don't get press attention, I find

14   it difficult to draw a straight line from maybe what happens in

15   this courtroom to deterrence.  I don't believe people are

16   necessarily aware of the sentences and the prosecutions in this

17   courthouse, but Mr. Arrington's case received significant media

18   attention.  I don't know if any members of the press are here

19   today, but I would expect it has received prior press, it will.

20   That has a powerful deterrent effect.  It's in the news.

21         I understand the Court's point about seeing this and

22   it was all sort of built on a falsehood, but sort of the

23   concluding chapter of that story is an individual who did that

24   is going to be getting a prison sentence and a federal felony

25   conviction because of what happened in this case.

1          And that is a compelling deterrent to anyone -- Your

2     Honor has indicated maybe other people who saw those billboards

3     and wondered, "How can I achieve this, how can I do that?"  The

4     message is going to be clearly sent after today: The way you do

5     it is not the way Mr. Arrington did it because Mr. Arrington is

6     now going to be a felon from this point forward, and he's going

7     to spend some amount of time in prison.  We don't know exactly

8     what that time is yet.

9          So there is deterrence occurring in this case through

10    the fact of prosecution and the fact of punishment, and much of

11    the research on deterrence is that it is, in fact, the

12    certainty of prosecution and the certainty of punishment, as

13    opposed to necessarily the length of punishment, that is the

14    most effective deterrent.

15          I want to take half a step back to what the

16    Government said about the guidelines now.  Judges across this

17    country, districts and circuits throughout the country, have

18    roundly rejected loss as a direct measure of culpability.  It

19    is of course relevant, and the Government's point about this

20    taking place over some period of time is, I think, also

21    relevant.

22          But if you look at what the guideline says, the

23    guideline says it's a base offense level of 7 which equates to

24    effectively a probationary or community confinement sentence,

25    which is not appropriate in this case and certainly not what

1  we're asking for.  And then 18 levels are added to that.  So
2  effectively the sole driving factor here in what the guidelines
3  recommend as a sentence is the loss amount.  It's the entire
4  ball game is the only way you can put it.

5  It's not in keeping with the charge Congress gave the
6  Sentencing Commission which is to look at empirical evidence.
7  Congress itself has regularly gotten itself involved, and after
8  it seems every large corporate scandal in this country, the
9  fraud guidelines go up because a congressperson gets upset, and
10  they tell the commission we need longer prison sentences in
11  this.  So now we are completely divorced from this sort of
12  empirical approach that the Sentencing Commission was supposed
13  to do.  It's not in keeping with how the Sentencing Commission
14  approaches its work in other areas.  And most importantly, it's
15  not in keeping with 18 USC 3553(a).

16  That statute, as the Court is well aware, directs the
17  Court to consider, in a way, a full panoply of factors.  The
18  guidelines, and the Government's adherence to the guidelines,
19  pulls in the opposite direction.

20  The Supreme Court has been extremely clear, even in
21  the pre-*Booker* era, that sentencing is an individualized
22  determination, and the effect that these guidelines have when
23  it is so driven by one factor in the case, it pulls it away
24  from this sort of individualized determination that the Court
25  should approach.  If you look at the individualized

1    determination, in other words, look at the individual seated to

2    the right of me today, Mr. Arrington has traveled a long road

3    in the past two years.

4           When I first met Mr. Arrington about 23 months ago,

5    he sat with me in the small conference room in the public

6    defender's office and we talked about the case.  And I'm not

7    going to disclose our conversation there because I feel that

8    that is still privileged communication, but I will say when

9    Mr. Arrington left my office, my first call was to Dr. Stejskal

10   because I truly believed we were heading towards a competency

11   proceeding in this matter.  I believed at that moment that

12   there was a very likely chance Mr. Arrington would not have

13   been competent to proceed in this case.  Now --

14          THE COURT:  You're referring to Dr. William Stejskal,

15   S-t-e-j-s-k-a-l?

16          MR. SZEKELY:  That's right.

17          THE COURT:  The clinical psychologist to whom --

18          MR. SZEKELY:  Correct.

19          THE COURT:  I have read his report that was filed.

20          MR. SZEKELY:  Thank you, Your Honor.   In

21   Mr. Arrington's case, psychiatric medication, I think, has been

22   nothing short of life altering.  When I first met

23   Mr. Arrington, he was abstinent from amphetamines for probably

24   about six months but was not regularly on a mood stabilizer.

25   Within weeks Ms. Hopkins and I saw the change in Mr. Arrington

1   as he began to first take Seroquel, which has a mood

2   stabilizing impact but is not first-order treatment the way his

3   current medication is for bipolar disorder.  This wasn't like

4   flipping a switch.  It did take some time for Mr. Arrington to

5   lose his most severe symptoms.

6          But he had extraordinarily severe symptoms, Your

7   Honor.  I know the Government has repeatedly, both in its

8   written submission and again here today, described bipolar

9   disorder as one being exemplified by people having manic

10  episodes, and that is certainly correct.  But the missing piece

11  here is the amount of amphetamines that Mr. Arrington was

12  taking led to literal psychosis.  He was taking so many

13  amphetamines that were perhaps masking at times and perhaps

14  exacerbating at other times the symptoms of his, at that time

15  undiagnosed, bipolar disorder.

16         I keep coming back to this because I want to sort of

17  rebut this idea that the bipolar disorder that Mr. Arrington

18  currently lives with isn't a motivating factor here.

19  Mr. Krulak said in July of 2018 there was a real acceleration

20  of the conduct in the case, and that's when Mr. Arrington, it

21  seems, a quarter of the loss was incurred during that one

22  31-day period.  I am certainly not surprised to learn if you

23  look back at this, Mr. Arrington's illness and drug use were

24  similarly accelerating during that time.

25         Your Honor, Mr. Arrington first developed mental

1  illness at the age that many young individuals do, in the mid
2  to late 20s.  So he tracks there, this was undiagnosed behavior
3  for a long time.

4       Secondly, Your Honor, Mr. Arrington, as I said
5  earlier, displayed psychotic symptoms.  It's noted in both the
6  presentence report and in Dr. Stejskal's report,
7  schizoaffective disorder which is an illness where individuals
8  have primarily a mood disorder like bipolar disorder but also
9  have symptoms in line with schizophrenia.  For example,
10 delusions of grandeur or hallucinations was on the table as a
11 potential diagnosis.  Fortunately, because schizoaffective
12 disorder is notoriously difficult to treat, that is not
13 Mr. Arrington's situation here today.  Those psychotic symptoms
14 have completely receded as he has remained abstinent from
15 amphetamines, in particular, but all substances coming up on
16 two years, and he's going to be able to manage this illness.

17      I also think it's important for the Court to note
18 Mr. Arrington's effort to address this situation.  First, in
19 in-patient rehabilitation.  A lot of people don't make it
20 through in-patient rehab; they leave before their 28 days are
21 up.  Mr. Arrington stayed through the end.  And he's really
22 engaged in the treatment that Pretrial in this case has
23 ordered.  He could have just gone and checked in and gotten his
24 medication -- and he certainly gets his medication, and I'll
25 talk about that in a minute.  But Mr. Arrington has been in,

1    effectively, nearly weekly individual counseling with mental

2    health providers.

3            What does that give him?  First it gives him tools to

4    sort of manage his daily life.  But it's also given

5    Mr. Arrington time to reflect and it's given Mr. Arrington

6    insight into his illness, especially crucially how his impact

7    affects -- how his illness affects his thoughts and how those

8    thoughts then affect his behavior.

9            The third part of this, Your Honor, is that living

10   with a mental illness is hard.  There are good days, there are

11   bad days.  What is especially difficult about living with

12   bipolar disorder is on your good days, your brain is lying to

13   you.  And your brain is sometimes telling you you don't need to

14   take your medication today because you feel good, and it takes

15   discipline and, again, insight into your own illness to know

16   that I have to take this pill every single day because if I

17   don't take it, I'm not going to be a good father, I'm not going

18   to be a good son, I'm not going to be a good brother, I'm not

19   going to be the person who I want to be.

20           Mr. Arrington is probably going to be taking one or

21   two or more of these medications potentially every day for the

22   rest of his life, but he's prepared to do that because the

23   things that are important to him, which now that Mr. Arrington

24   is out of the sort of haze of drug use and illness, what's

25   important to Mr. Arrington?  Coaching his son's sports teams,

1  being there for his family, spending time with his family,

2  going to family events, things of that nature.  That ability to

3  think clearly through treatment, through therapy, is why

4  Mr. Arrington has for the past two years had, with the

5  exception of handful of times he was out of range in October

6  2019, a solid record on pretrial supervision.

7        What does that tell the Court?  First thing it can

8  tell the Court is Mr. Arrington is going to comply with

9  supervision when Mr. Arrington is on supervised release.  We

10  are asking the Court, we suggested in our sentencing memorandum

11  three conditions of supervision that were not actually in the

12  PSR.  We're asking for them to be added.  I'm happy to review

13  those now or we can review those later in the proceeding, Your

14  Honor.

15        If someone has been on pretrial supervision for 23

16  months -- and the pandemic has unfortunately delayed this as it

17  has many other proceedings, but it's also given the Court an

18  opportunity to see his track record.  Mr. Arrington is before

19  Your Honor today.  Mr. Arrington will be back before Your Honor

20  at Your Honor's reentry court which, hopefully as things open

21  up, will resume its usual proceedings in the near future.  And

22  that's the last time Mr. Arrington is going to be here in

23  courtroom 5D with Your Honor because he's going to succeed on

24  supervised release because he has shown he can.

25        Your Honor, a 48-month sentence in this case would be

1  excessive.  The Government's recommendation does not account

2  for public safety or the fact that Mr. Arrington going forward

3  is not going to be any risk to public safety, not only because

4  of supervision, but because -- it would be difficult to fathom

5  an employer at this point putting Mr. Arrington back in the

6  position he was in before.

7         As I said earlier, deterrence is -- the certainty of

8  prosecution which happened here and the certainty of punishment

9  which the Court will be imposing very briefly are the most

10  effective deterrents.  There's no question this case is

11  serious.  There's no question that Mr. Arrington's conduct in

12  this case hurt people.  But the 3553(a) factors push very hard

13  back in the other direction; explaining Mr. Arrington's

14  conduct, showing the Court why Mr. Arrington is never going to

15  do anything like this again.

16         Your Honor, I will let Mr. Arrington speak for

17  himself in just one moment, but we are asking the Court at this

18  point to impose a one-year-and-one-day sentence in this case.

19  I have a short list of supervised release and BOP

20  recommendations.  I'm happy to provide them now or --

21         THE COURT:  Why don't you give them to me now,

22  certainly.

23         MR. SZEKELY:  Certainly.  In terms of supervised

24  release, Your Honor, per Dr. Stejskal's request -- and with

25  Mr. Arrington's consent, I should add; all of these are with

1    his consent.  With Mr. Arrington's consent, we are asking that

2    blood testing for medication compliance be added as a condition

3    of supervised release.  Mr. Arrington should have a pretty

4    consistent level of the medication he takes in his bloodstream,

5    and Dr. Stejskal says it's very easily verifiable through

6    routine testing, so we would ask that Mr. Arrington have to do

7    blood testing to determine his medication compliance.

8            That way if there's any issues, his probation officer

9    can get in front of it and hopefully get -- I don't foresee

10   this happening because Mr. Arrington is very self-motivated to

11   remain in compliance with treatment, but it will give the

12   probation officer a tool to make sure things don't get off the

13   rails.

14           We are also asking for supervised release conditions

15   that Mr. Arrington, if he's going to be applying for a job

16   where he may be dealing with money, that he disclose the fact

17   of his conviction to that employer.  I don't always like the

18   disclosure requirements in supervised release, but I think it's

19   absolutely appropriate in this case.

20           And I also think that Mr. Arrington should also have

21   to get his probation officer's permission before any job where

22   he'll be handling other people's money.  I think those are

23   appropriate and well-tailored release conditions -- again, not

24   in every case, but I think in this case, they are absolutely

25   appropriate and we'd ask they be added.

1           In terms of Bureau of Prisons recommendations, Your

2   Honor, Mr. Arrington and I met today.  We reviewed some options

3   together, and we would respectfully request the Court recommend

4   placement at FCI Morgantown Low --

5           THE COURT:  Placement where?

6           MR. SZEKELY:  FCI Morgantown Low in West Virginia.

7   We would ask that the Court recommend if appropriate, and if

8   the sentence is of sufficient length, placement within RDAP.

9   We would ask that the Court recommend mental health and

10  substance abuse treatment.

11          I will note that Mr. Arrington was incarcerated from

12  June 4 and was released on June 7, all in 2019, so I would

13  request that the judgment reflect that amount of pretrial

14  credit in this case.

15          Additionally, Your Honor, I would ask -- I've spoken

16  with Ms. Garner about this right before the proceeding.  I

17  would request that Dr. Stejskal's report be made part of the

18  packet of materials the Probation Office uploads via the

19  E-designate program.  That way there will be continuity of

20  care --

21          THE COURT:  Referring to your submission, Document

22  No. 63-1, that was filed on April 28.

23          MR. SZEKELY:  That's correct.

24          THE COURT:  The report of Dr. William Stejskal, a

25  clinical psychologist -- he's a Ph.D. doctor.

1          MR. SZEKELY:  Correct.

2          THE COURT:  William Stejskal, S-t-e-j-s-k-a-l, a

3    licensed clinical psychologist.

4          MR. SZEKELY:  That's correct.  I would ask that that

5    follow Mr. Arrington into the Bureau of Prisons.

6          Finally, paragraph 78 of the presentence report --

7    Ms. Garner, I apologize, I forgot to discuss this with you

8    before -- lists Mr. Arrington's initial diagnosis which is

9    incorrect.  I'd ask paragraph 78 be updated to reflect

10   Mr. Arrington's current diagnosis of bipolar disorder.

11         With that, Your Honor, I'll turn it over to

12   Mr. Arrington, except to say that the Pretrial Services had

13   recommended self-surrender.  We'd request self-surrender, and

14   we could certainly discuss a date later in the proceeding.

15   Thank you.

16         THE COURT:  Thank you very much, Mr. Szekely.  As

17   always, thank you for your very thorough representation.

18         I would note I have reviewed the letters attached to

19   your papers: a letter from an attorney, Jamar E. Daniel,

20   apparently a former basketball teammate of Mr. Arrington's at

21   McDaniel College.  Also from Miguel Jones who appears to also

22   have been a basketball teammate, it would appear; as well as

23   another teammate, Brett Foelber, F-o-e-l-b-e-r.  Looks like all

24   three are former colleagues and teammates of Mr. Arrington at

25   McDaniel College in the basketball program.  I have read all

1   those letters.

2          I have read Dr. Stejskal's, the clinical

3   psychologist, I've read his report as well.

4          So with that, if you'll please stand, Mr. Arrington.

5   I now personally address you and determine if you wish to make

6   a statement and give you the opportunity to speak on your own

7   behalf.  Would you like to make a statement, sir?

8          THE DEFENDANT:  Yes, sir.

9          THE COURT:  Glad to hear from you.  Keep your voice

10  up.

11         THE DEFENDANT:  All right, cool.

12         Dear Judge Bennett, I write this open letter to you

13  and to all who stand in judgment of me from the guilt and bad

14  decisions that I've made on my behalf that have not only

15  humiliated me but my son, family and friends.  I'm extremely

16  remorseful for the losses incurred because of my bad decisions.

17  In pleading guilty to a federal crime has caused me to spend

18  countless hours reflecting on how I brought these troubles upon

19  myself.

20         I knew better than to engage in these crimes that I

21  have committed, and I have accepted responsibility for my

22  wrongs which have been the first step for me during this long

23  journey.  Yet I know that I owe so much more than this guilty

24  plea.  I acknowledge that I have lacked the good character to

25  make better decisions, and for the rest of my life, I'll work

1    hard to reconcile with society.

2            As you deliberate over the appropriate sentence for

3    my criminal behavior and the losses I have caused, I am hopeful

4    that you will take my entire life into consideration.  During

5    this time of reflection, I felt that it was important for me to

6    understand the purpose or purposes of my going to prison were

7    to serve.  The purpose, it is to serve both those that I have

8    wronged and my growth as a person, as this may be a real life

9    option that has chosen to be the way that I right my wrongs,

10   and I am determined to make every effort to do just that.

11           As a result of the horrible decision after horrible

12   decision, I have been publicly ashamed and embarrassed by the

13   greed that drove me to want more than I ever had imagined.

14   Without self-discipline or control, I fell so deep into my

15   rabbit hole, causing distress to those I have wronged and to

16   myself along the way.

17           Being in serious legal trouble for the first time

18   ever and placed on house arrest for two years was the rude

19   awakening of how serious and crazy my life had gotten.  I knew

20   that anything criminal was never meant to be a part of my path,

21   and I cannot believe that I let greed and additional bad

22   decisions tear me apart from who I was, tear me apart from my

23   family.  And as crazy as some things I might say might sound,

24   maybe this needed to happen on a personal level to save me and

25   my body from the drug abuse and mental destruction, from bad

1  decisions that I may have never made without this.

2       I am grateful and I appreciate the opportunities.  I

3  must fix what I have done and also heal myself.  I have broken

4  the trust and I was being monitored, and I needed to regain

5  that trust and grow.

6       Over these past three years, I'm proud to say that I

7  have begun to do that.  I followed and still do follow through

8  with my therapies and medications to be sure I fulfill my

9  promises to myself, my child, my family and society.  This is

10  me restoring my health to normalcy and rehabilitation.

11       Dear Honorable Judge Bennett, I understand truly what

12  you were saying when you talked about not just the ten

13  employees that were affected by my wrongdoings.  I understand

14  exactly what you're saying when you speak about the young

15  people in the community need somebody to look up to, that hope

16  to see somebody that looks just like them do the right things,

17  like go to college, stay out of trouble, get a great job in

18  corporate America, and come back and try to teach them to do

19  the same things.

20       As much as I've been through over the last two, three

21  years, I understand my family has been through even worse.

22  They worry about me on a consistent basis.  My son who is not

23  here with me today, I love him dearly.

24       THE COURT:  Your son is now eight years old?

25       THE DEFENDANT:  My son is eight.  He turns nine on

1    May 21.  Has a birthday two weeks away.  Couldn't imagine a day

2    being without him.  As a young father, it's amazing for me to

3    be in my community and actually be in his life because we don't

4    have a lot of guys like myself to sacrifice, not only be a part

5    of his life but also have a relationship with the mother.  I

6    come to speak about what you say as far as being a part of a

7    community where we're from and not having somebody to look up

8    to, and I could have been that guy.

9         I'm not going to say it was the Adderall that made me

10   feel like a superhero.  It was me feeling like I always been a

11   superhero.  I got a mom, I got a father.  I got a lot of role

12   models, and I took the great things these guys taught me as I

13   was growing up, and I tried to be that.  I was always the top

14   of my class in high school, always the top of my class in

15   college, and I was the best employee at Agora, and I worked

16   hard for that.

17        To me, becoming Chad Focus, it was never about

18   becoming Chad Focus, it was about the focus word.  It was about

19   people that look like me, young, brown and black kids, in

20   Baltimore City, the most dangerous place in the world, being

21   able to hope that they could see something, and I fell short,

22   like you said.  And I apologize because my example could have

23   been an example that not only motivated them but showed them it

24   could be done.

25        As you speak about that being done in a purported way

1    because of fraud, I didn't hope for that to be an intention,

2    and I hope that that $4 million could have been shown, look, we

3    can do this as a community.  The concert tickets, Judge

4    Bennett, they were used to allow those kids in the inner city

5    to go to the concert for free.  The community events I did in

6    the city of Baltimore, I did over 40 of those, I sponsored all

7    the events and charities that nobody speaks about, and I

8    understand that.  For me, I wish I could have gave them the

9    type of hope the right way.

10          I just wanted to give you the context of where you

11   felt as far as your comments about how I felt about the

12   community and why I apologize, and you're right; I did let down

13   the city and I did let down the youth.  And for all those

14   watching, I hope there will be a story of redemption.

15          I've experienced the constant sight of disappointment

16   and embarrassment in the faces that I love in the community.

17   It's been a terrible experience.  These last few years have

18   been life shattering for myself, and those actions have

19   affected my loved ones dearly.  I do not wish this form of

20   public consequence for these huge mistakes on anyone.  Not

21   being able to privately go through punishment is what I needed

22   and it made me a better person.

23          I hope to show that I can again be trusted and given

24   a second chance.  Please allow me to pay back those I owe so

25   much to.  As every event that has taken place in my life in the

1   past to lead to this sentencing has been taken into

2   consideration, I hope and I pray that the Court allows me to

3   redefine my future with where I stand today.  Thank you for

4   your deep thought and consideration.

5         (Conference on the sealed record.)

6         (It is the policy of this court that every guilty plea and

7   sentencing proceeding include a bench conference concerning

8   whether the defendant is or is not cooperating.)

9         THE COURT:  Thank you, Mr. Arrington.  You talked

10  about the young people look up to you.  You obviously must have

11  succeeded on the basketball court at Randallstown High School,

12  correct?

13        THE DEFENDANT:  Yes, sir.  State champion, 2005.

14        THE COURT:  I thought so.  I don't say this all the

15  time, but having been active in athletics myself at one time, I

16  many times share this story because you're going to need to

17  remember this.  I once went to a football banquet, representing

18  my high school, and a football coach there said to a lot of

19  cocky young athletes, "I don't care what you've done or where

20  you've been; I care what you're doing and where you're going."

21  That message was to a group of really cocky 17-, 18-year-old

22  kids, but it's also true in terms of where you are now.

23  Because reality is because you're an athlete, you're used to

24  getting knocked down and getting back up.

25        THE DEFENDANT:  Yes, sir.

1          THE COURT:  You understand what I'm saying to you?

2          THE DEFENDANT:  Yes, sir.

3          THE COURT:  It means you've got to turn your life

4   around.  I'm confident that you're turning your life around.

5   But I will tell you that a higher calling is required of you.

6   I hear Mr. Szekely and his very eloquent remarks about a

7   message to the community.

8          Here's a message to the community:  We have kids

9   coming in here dealing in drugs, caught with drugs, caught with

10  guns.  Do you have any idea the prison sentences that come out

11  of this courthouse?

12         THE DEFENDANT:  Yes, sir.

13         THE COURT:  It's unbelievable.  We have statutes that

14  mandate 5-, 10-, 15-year mandatory minimum sentences.  There

15  are kids that stand there where you are that didn't have

16  anywhere near the chance you've had, they pray to get a 10-year

17  sentence and not a 15- or 20-year sentence.  Do you understand

18  what I'm saying?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  And here you come along and you come in

21  with a white-collar fraudulent offense, and you essentially

22  embezzle and steal $4 million, and I can't think of a worse

23  message than to give you a sentence of one year and one day.

24  Mr. Szekely talks about a message -- that's a message.  That's

25  a real message.  That's a real message that nothing happens to

1  you.  We've got kids on this street that can't find jobs,

2  they're lost.  To hear that somebody embezzles $4 million and

3  gets a year and a day, it's like, "Whoa, I'll take that

4  chance," because they're dealing in drugs, running the risk of

5  15 and 20 years in prison.

6       So a year and one day would send an absolutely

7  terrible message to the community.  Exactly the opposite

8  message.  Understandably so.  "What the heck, if it's just

9  stealing money, we can get away with it.  We may or may not get

10  our knuckles cracked."  That's what's before us here, is that

11  the message has to go out in terms of a white-collar offense

12  and a fraud offense.  A higher expectation is called for you.

13       I remember one time putting a prominent Baltimorean

14  in prison for a period of time.  I said:  You're like the

15  captain of the football team who gets drunk the night before

16  the big game.

17       You're the basketball star that had it all right

18  there, including being able to play in college.  Good job.  The

19  works.  And you blew it.  Doesn't mean you can't come back.

20  Doesn't mean you're not turning your life around.  You are.

21  And I'm going to exercise some compassion here.  I'm not going

22  to necessarily give you the prison sentence recommended by the

23  Government, but I will tell you the Government is not being

24  unreasonable about this because you were really way off the

25  edge.

1          I read the mental health reports of the clinical

2     psychologist.  I certainly respect his professional opinion,

3     but you were on a roll.  You were creating a myth.  And you

4     didn't need to.  You were good enough without trying to be Chad

5     Focus.  You didn't have to create a myth.  You're Chad

6     Arrington.  You're a college graduate.  You're a good

7     basketball player, a good person, good family.  You already

8     were there.  You didn't have to create this myth of being Chad

9     Focus.  So you have to be punished accordingly because a

10    message has to go out.

11         I've said this on more than one occasion, so your

12    family understands.  In light of the prison sentences that are

13    imposed on young people in this metropolitan area in drug

14    prosecutions, I feel very strongly about the fact that a

15    message has to go out on white-collar prosecutions as well, so

16    that the message isn't just, "Well, as long as you aren't

17    caught dealing drugs, it's okay, but God help us if you're

18    caught dealing drugs."  That's a whole different matter -- you

19    know what this community is facing.  You have to step up and

20    accept the fact you've got to be punished, visibly punished, so

21    that young people realize that there are limits here, and you

22    had it.

23         It doesn't mean you can't get it back, doesn't mean

24    you can't be a great role model.  I project you, years down the

25    road from now, coaching a rec council basketball team,

1    counseling some young man who's having a problem because you've

2    been there.  You're there now, right here in federal court.  So

3    you've got to use it as a positive.  You understand what I'm

4    saying?

5            Don't for a minute think that I'm not compassionate

6    about what you've gone through, but there's over $4 million

7    that was just absorbed.  There's no way, simply no way that a

8    prison sentence of a year and a day adequately addresses that,

9    and it sends exactly the wrong message.

10           I've considered all these factors.  I've considered

11   the guideline range here, and the guideline range is helpful.

12   Just so you know, the guideline range is helpful with respect

13   to trying to have some national consistency.  The purpose of

14   the guidelines before it became some kind of complex algebraic

15   equation, the purpose of the guidelines was to see to it that a

16   federal judge in Baltimore was somewhat consistent with a

17   federal judge in Los Angeles or Chicago or Miami.  That's the

18   purpose of the guidelines, uniformity of sentence.  That's the

19   purpose.  That gets lost a lot in all these numbers and

20   equations.

21           But I think the guideline range has it pretty close

22   to right in terms of what is required here in this case.

23   Having said that, I think that the sentence can be structured

24   in a way that we're at the lower end of these guidelines.

25   There's a particular section in the advisory guidelines that

says that one day of home detention can equal one day of
incarceration, Section 5C1.1(e)(3) of the advisory guidelines.
I'm going to order that the first year of your supervised
release you be on home detention, essentially house arrest.
I'm factoring that into the sentence I impose here in terms of
the appropriate sentence here.

So it is ordered that you be remanded -- I've
factored all of these *Booker* and *Gall* factors in in terms of
the message to the community, the guideline calculation, and I
factored all those factors in as well here.  It's as follows:

There will be a total structure of 42 months.  You'll
be remanded to the custody of the Bureau of Prisons for a
period of two-and-a-half years; that's 30 months.  30 months
incarceration on Count 1 with credit for time served in federal
custody from June 4 of 2019 to June 7 of 2019.

I'm going to recommend that during this period of
incarceration for 30 months that you receive psychological
counseling, mental health treatment, substance abuse treatment
for whatever you're deemed eligible.  I'll recommend the RDAP
program; it's up to the Bureau of Prisons if they place you in
it.  It could cause you to serve less time.  I'm going to
recommend that you go to, as requested, FCI Morgantown Low,
West Virginia.

I'm going to certainly permit voluntary surrender.
The Government doesn't have any reason to believe this

1     defendant represents a risk of flight or threat to the

2     community, do you?

3              MS. SETZER:  No, Your Honor.

4              THE COURT:  I've read the Pretrial Services report

5     that recommends voluntary surrender.  You're going to be placed

6     on supervised release after your prison sentence for three

7     years with the mandatory and standard conditions that I'm going

8     to summarize in a minute and the additional conditions.  But

9     the most important additional condition is that you're on 12

10    months' home detention for the first 12 months.  So I

11    structured 30 plus 12 equals 42 which is at the low end of the

12    guidelines, and it is an alternative way.

13             I think a straight 4-year period of prison would be

14    excessive here.  I think the appropriate message gets out with

15    the 2 1/2-year prison sentence.

16             You're obviously going to be ordered to make

17    restitution during this period of supervised release.  The

18    period of supervised release of three years with the mandatory

19    and standard conditions of supervision adopted by the court.

20    Those mandatory conditions -- which I must summarize now in

21    light of recent Fourth Circuit case law -- read all these out

22    to you, is that you must not commit any other federal, state or

23    local crime; that you're not unlawfully to possess a controlled

24    substance; that you must refrain from any unlawful use of a

25    controlled substance; that you must submit to one drug test

1   within 15 days of your release from imprisonment and at least
2   two periodic drug tests thereafter as deemed advisable by the
3   probation officer.

4           You must make restitution in accordance with 18
5   United States Code, Section 3663 and 3663(a), in the total
6   amount of $4,142,435.31.  The special condition will be that
7   you make payments of $200 a month toward that, and the rest of
8   it will be handled by the financial litigation unit of the U.S.
9   Attorney's Office.

10          You must cooperate in the collection of DNA as
11  required by the probation officer.  Sex offender registration
12  and domestic violence issues are not present in this case.

13          They are the mandatory conditions.

14          In addition, the standard conditions are that you
15  must report to the Probation Office within 72 hours of your
16  release from prison and follow all instructions of the
17  probation officer, and after initially reporting to the
18  probation officer, you are to receive instructions about how
19  and where to report from that point forward.  You must not
20  knowingly leave the federal district where you're housed
21  without permission from the probation officer.

22          You must truthfully answer all questions asked by the
23  probation officer.  You must live in a place approved by the
24  probation officer, and you must allow the probation officer to
25  visit your home or elsewhere at any time to check out these

1    living arrangements.

2          You must make every effort to gain full-time

3    employment, and you are not to communicate or interact with

4    anyone who you know or have reason to believe is engaged in

5    criminal activity.  And if you know someone has been convicted

6    of a felony, you must not knowingly communicate or interact

7    with that person without first getting the permission of your

8    probation officer.

9          If you are arrested or even questioned by law

10   enforcement, traffic stop, whatever, you are to notify your

11   probation officer within 72 hours of that kind of interaction

12   with law enforcement.  You are not to possess or have access to

13   a firearm, ammunition, destructive device or any other

14   dangerous weapon.  You are not to act as an informant with law

15   enforcement absent approval of this court.

16         If it's determined that you pose a risk to anyone

17   else and the probation officer will so indicate to me, you are

18   not to have contact with that person.

19         In addition to all those mandatory and standard

20   conditions, the additional conditions are as follows, first of

21   which I already mentioned.  You are placed on supervised

22   release with home detention for a period of 12 months and to

23   follow all the costs of that program and pay the costs of that

24   program.  You are permitted to go to work.  You are permitted

25   to go to medical appointments, church, that kind of thing, but

1    otherwise you're on home arrest for the first 12 months of your

2    period of supervised release.

3            You must pay a $100 special assessment, and that will

4    just be deducted from your prison wages once you are

5    designated.  You are not to incur any new credit charges

6    without the approval of the probation officer.  You are to

7    provide the probation officer with access to all requested

8    financial information.

9            You are to submit to blood testing to ensure medical

10   compliance with your health needs.

11           You are to also provide notice to any future

12   employers as to the nature of this offense and this conviction.

13           As I've already said, you are to pay the monetary

14   restitution imposed by this Court at the rate of $200 per

15   month.

16           You are to participate in any mental health treatment

17   and medications and substance abuse program or substance abuse

18   testing as deemed necessary, and you are not to use any

19   controlled substance without a valid prescription.

20           This period of supervised release which is the

21   maximum period of supervised release will allow proper

22   monitoring here, and God willing, if I'm still up here on the

23   court when you're released, you'll come back to my reentry

24   court, and we'll help you.  Hopefully, that will be reinstated

25   once the pandemic is over.  The third Thursday of every month,

1  I have people here whom I've put in prison, and we have a

2  reentry court.  We try to get you off on the right step.

3  Supervised release is meant to be a constructive process, not a

4  negative process.

5          I'm not going to impose a fine because you're not

6  able to pay a fine, and all the money you earn has to go

7  towards this restitution.  The special assessment, as I've

8  said, is mandatory and will just be deducted from your prison

9  wages.

10          You're not a risk of flight or threat to the

11  community in the eyes of the Government, and Pretrial Services

12  concurs, so you will be permitted voluntary surrender.  I'll

13  give you 90 days to report, and you'll be designated and you

14  voluntarily report.  That would place the defendant, I gather,

15  in the month of August --

16          THE CLERK:  Judge, Tuesday, August 3rd.

17          THE COURT:  Tuesday, August 3rd.  Your reporting date

18  will be Tuesday -- thank you, Ms. Carter.  Tuesday, August 3rd,

19  2021.

20          I want to advise you of your appeal rights,

21  Mr. Arrington.  In paragraph 10 of the plea agreement letter,

22  both you and the Government waived appeal of any lawful

23  sentence, and I believe both sides have waived appeal here.

24  But if you did want to note an appeal, you should do so within

25  14 days of the entry of the Judgment & Commitment Order in this

1    case pursuant to Rule 4(b) of the Federal Rules of Appellate

2    Procedure.  If you could not afford an attorney to represent

3    you, an attorney would be appointed to represent you.

4            Mr. Szekely, you and Ms. Hopkins do not need to

5    notify the Court, but just make sure your own file reflects

6    you've discussed his right of appeal with him, and presumably

7    he does not desire to file an appeal.

8            MR. SZEKELY:  Understood, Your Honor.

9            THE COURT:  Is there anything further from the point

10   of view of the Government, Ms. Setzer?

11           MS. SETZER:  No, thank you, Your Honor.

12           THE COURT:  I want to thank you for your thorough

13   preparation on behalf of the Government here.  I certainly

14   heard what you had to say about the four-year sentence.  I

15   think this is appropriate and sufficient but not greater than

16   necessary to achieve the goals.

17           Anything further, Mr. Szekely?

18           MR. SZEKELY:  Nothing on behalf of Mr. Arrington.

19   Thank you.

20           THE COURT:  Thank you, as always, for your very

21   thorough preparation of representing your client.

22           Mr. Arrington, it doesn't give me any pleasure doing

23   this.  I wish you the best of luck.

24           THE DEFENDANT:  Yes, Your Honor.

25           THE COURT:  Every time I sentence somebody, I

1  consider the people I've sentenced before and after, and the

2  message has to go out that you have to be punished like anyone

3  else, and you have to pay the price for the financial fraud

4  that you committed here.

5          But you have plenty of life ahead of you.  You're 33

6  years old now; is that right?

7          THE DEFENDANT:  Yes, sir.

8          THE COURT:  You have plenty of life ahead of you.

9  You can be the role model that you were before, a different

10  kind of role model.  But you can be the role model that you

11  were before in a different capacity, and you can serve as an

12  illustration not only to young people as to what happens when

13  they go astray but also how they can come back.

14          You're an athlete; now's the time to be an athlete.

15  And I wish you the best of luck, and I think you can bounce

16  back.

17          With that, this Court stands adjourned for the day.

18  Thank you all very much.

19          THE CLERK:  All rise.  This Honorable Court is

20  adjourned.

21     (Proceedings concluded at 3:40 p.m.)

22                              ***

23

24          I, Patricia G. Mitchell, RMR, CRR, do hereby certify

   that the foregoing is a correct transcript from the

25

1   stenographic record of proceedings in the U.S. v. Arrington

2   matter.

3           Dated this 4th day of August 2021.

4

5                        *Patricia G. Mitchell*

6           _____
                    Patricia G. Mitchell
7                   Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

< Dates >
**April 21** 15:7 .
**April 28** 9:5, 29:14, 43:22 .
**August 2021.** 63:5 .
**August 3rd** 60:16, 60:17 .
**August 3rd, 2021** 60:18 .
**December 19, 2019** 13:18 .
**December 2007** 8:11 .
**February 3rd** 2:7, 13:19 .
**June 4** 43:12, 55:15 .
**June 7** 43:12, 55:15 .
**May 05, 2021** 1:17 .
**May 21** 48:1 .
**October 2019** 40:5 .
**$1.5** 28:14 .
**$100** 59:3 .
**$200** 26:3, 26:24, 29:4, 57:7, 59:14 .
**$240** 18:12 .
**$242** 17:6 .
**$3.5** 13:8 .
**$4** 27:12, 49:2, 51:22, 52:2, 54:6 .
**$4,142,435.31** 29:4 .
**$4,142,435.31.** 15:15, 57:6 .
**$4.1** 27:4, 28:11 .
**(2:19** 2:2 .
.
.
< 1 >
**1** 2:8, 11:15, 13:3, 13:19, 55:14 .
**1.** 6:25, 15:3 .
**1/2-year** 56:15 .
**10** 7:16, 60:21 .
**10-** 51:14 .
**10-year** 51:16 .
**101** 1:49 .
**12** 13:1, 29:17, 56:9, 56:10, 56:11, 58:22, 59:1 .
**14** 12:19, 60:25 .
**15** 30:1, 52:5, 57:1 .
**15-** 51:17 .
**15-year** 51:14 .
**16** 6:18 .
**17-** 50:21 .
**18** 8:2, 13:7, 21:24, 21:25, 35:1, 35:15, 57:4 .
**18-year-old** 50:21 .
**19-cr-00264-rdb-1** 1:10 .

**1:** 1:10 .
.
.
< 2 >
**2** 14:24, 22:18, 56:15 .
**20** 12:20, 52:5 .
**20-year** 51:17 .
**2003** 10:25, 11:4, 11:22, 13:25 .
**2004** 12:8 .
**2005** 6:21, 7:2, 50:13 .
**2015** 12:9 .
**2018** 13:25, 37:19 .
**2019** 43:12, 55:15 .
**2019.** 55:15 .
**2020** 2:7, 13:20 .
**2020.** 6:24 .
**20s** 38:2 .
**21201** 1:50 .
**22** 13:16, 14:9 .
**23** 36:4, 40:15 .
**24** 19:6 .
**25** 13:5 .
**25.** 13:10 .
**28** 38:20 .
**2:00** 1:18 .
**2b1.1(a)(1** 13:6 .
.
.
< 3 >
**3** 14:24 .
**30** 11:6, 11:20, 55:13, 55:17, 56:11 .
**31-day** 37:22 .
**33** 62:5 .
**3553(a** 8:2, 35:15, 41:12 .
**3663** 57:5 .
**3663(a** 57:5 .
**39** 17:10 .
**3:40** 62:21 .
.
.
< 4 >
**4** 14:24, 19:16 .
**4(b** 61:1 .
**4-year** 56:13 .
**40** 49:6 .
**41** 14:10 .
**42** 55:11, 56:11 .
**43** 13:2 .

**48** 15:11, 20:1 .
**48-month** 40:25 .
**4th** 1:49, 63:5 .
.
.
< 5 >
**5** 6:23, 14:24 .
**5-** 51:14 .
**51** 14:10 .
**5c1.1(e)(3** 55:2 .
**5D** 1:23, 40:23 .
.
.
< 6 >
**6** 14:24 .
**60** 15:6 .
**63** 5:19, 12:19, 29:14 .
**63-1** 43:22 .
.
.
< 7 >
**7** 13:6, 14:24, 19:16, 34:23 .
**72** 57:15, 58:11 .
**73** 9:16 .
**78** 44:6, 44:9 .
.
.
< 9 >
**9** 15:3 .
**9.5** 13:9 .
**90** 60:13 .
**99** 12:20 .
.
.
< A >
**ability** 40:2 .
**able** 4:4, 26:5, 27:1, 27:2, 38:16, 48:21, 49:21, 52:18, 60:6 .
**absent** 12:14, 58:15 .
**absolutely** 42:19, 42:24, 52:6 .
**absorbed** 54:7 .
**abstinent** 36:23, 38:14 .
**abuse** 43:10, 46:25, 55:18, 59:17 .
**accelerating** 23:7, 37:24 .
**acceleration** 37:19 .
**accept** 53:20 .
**acceptance** 13:12 .

accepted 21:7, 45:21 .
access 3:25, 58:12, 59:7 .
accordance 57:4 .
accordingly 53:9 .
account 7:11, 17:17, 19:7, 19:17,
    19:18, 19:23, 20:13,
    41:1 .
accounting 25:3 .
accountings 20:6 .
accurately 23:7 .
achieve 8:21, 34:3, 61:16 .
acknowledge 45:24 .
acknowledged 14:15 .
across 20:22, 23:23, 34:16 .
Act 7:7, 10:25, 11:2, 11:4, 12:22,
    58:14 .
actions 16:19, 30:12, 49:18 .
active 50:15 .
activity 58:5 .
actual 18:2, 21:11 .
Actually 14:7, 29:22, 40:11,
    48:3 .
add 41:25 .
added 35:1, 40:12, 42:2,
    42:25 .
Adderall 10:4, 48:9 .
addiction 10:4 .
addition 13:6, 19:5, 20:3, 24:12,
    57:14, 58:19 .
additional 4:1, 17:9, 19:12,
    23:16, 25:21, 46:21, 56:8,
    56:9, 58:20 .
Additionally 43:15 .
address 3:7, 14:14, 21:21, 24:11,
    33:1, 33:2, 38:18, 45:5 .
addresses 15:16, 15:20,
    54:8 .
addressing 30:8 .
adequately 22:25, 54:8 .
adherence 35:18 .
adjourned 62:17, 62:20 .
adjudication 14:2 .
adjustment 13:11 .
administrative 11:21, 12:9,
    12:10 .
admonished 8:14 .
adopted 7:25, 56:19 .
advance 30:15 .
advisable 57:2 .
advise 60:20 .

advisory 7:9, 8:18, 12:25, 14:10,
    54:25, 55:2 .
affect 22:9, 39:8 .
affected 47:13, 49:19 .
affects 39:7 .
afford 61:2 .
afternoon 2:3, 2:12, 2:20, 3:13,
    3:17, 3:19, 12:24, 21:22,
    21:23, 22:15, 22:24 .
age 38:1 .
Agent 2:25, 3:1, 3:2 .
Agents 1:40, 2:14 .
aggravated 19:5, 20:4 .
ago 6:13, 21:25, 23:5, 36:4 .
Agora 48:15 .
agreed 15:14 .
agreement 6:23, 7:16, 11:14,
    13:17, 15:1, 15:3, 15:14,
    19:8, 60:21 .
ahead 62:5, 62:8 .
aid 11:10, 18:9 .
algebraic 54:14 .
allocute 30:6 .
allocution 9:2 .
allow 49:4, 49:24, 57:24,
    59:21 .
allows 50:2 .
already 13:22, 19:4, 53:7, 58:21,
    59:13 .
alter 24:4 .
alterations 26:19 .
altering 36:22 .
alternative 56:12 .
amazing 48:2 .
America 1:5, 47:18 .
American 4:11, 4:15, 20:12,
    23:9 .
ammunition 58:13 .
among 11:1 .
amount 5:12, 16:4, 17:15, 18:1,
    18:3, 18:12, 18:19, 20:2,
    20:4, 20:16, 23:17, 28:10,
    28:14, 34:7, 35:3, 37:11,
    43:13, 57:6 .
amounted 20:13 .
amounts 17:5 .
amphetamines 36:23, 37:11,
    37:13, 38:15 .
amplify 23:3 .
Andrew 1:35, 3:11 .

Angeles 54:17 .
annual 24:18 .
answer 57:22 .
anticipate 21:6, 21:7, 27:2 .
anticipated 6:3, 13:17,
    19:19 .
anxiety 10:4, 10:7 .
anybody 6:15 .
apart 8:19, 9:1, 46:22 .
apologies 27:20 .
apologize 29:20, 44:7, 48:22,
    49:12 .
apparent 33:9 .
apparently 44:20 .
appeal 7:17, 7:19, 7:22, 60:20,
    60:22, 60:23, 60:24, 61:6,
    61:7 .
appeals 7:15 .
appear 44:22 .
appears 44:21 .
Appellate 61:1 .
applicable 11:13 .
applied 7:9 .
applies 8:13 .
apply 7:10 .
applying 16:23, 42:15 .
appointed 61:3 .
appointments 58:25 .
appreciate 4:6, 32:11, 47:2 .
approach 7:25, 35:12,
    35:25 .
approaches 35:14 .
appropriate 11:18, 18:21, 19:1,
    34:25, 42:19, 42:23, 42:25,
    43:7, 46:2, 55:6, 56:14,
    61:15 .
appropriately 30:18 .
approval 58:15, 59:6 .
approved 57:23 .
Approximately 5:7, 28:14 .
area 53:13 .
areas 35:14 .
argue 6:6, 6:8 .
argued 33:5 .
arguing 9:2 .
argument 6:5, 15:25, 18:17,
    26:21 .
around 51:4, 52:20 .
arrange 4:3 .
arrangements 58:1 .

**arrest** 46:18, 55:4, 59:1 .
**arrested** 58:9 .
**Arrington** 1:10, 2:4, 3:12, 3:17,
    3:21, 3:23, 4:17, 5:1, 5:23,
    6:12, 10:24, 11:24, 13:16,
    14:21, 18:6, 21:20, 22:15,
    23:2, 23:15, 23:18, 23:24,
    24:3, 24:4, 25:13, 27:9,
    28:18, 29:13, 30:5, 30:7,
    30:10, 30:11, 30:15, 30:16,
    30:19, 30:21, 30:23, 31:1,
    31:4, 31:5, 31:13, 32:14,
    32:15, 32:16, 33:7, 33:17,
    34:5, 36:2, 36:4, 36:9, 36:12,
    36:21, 36:23, 36:25, 37:4,
    37:11, 37:17, 37:20, 37:23,
    37:25, 38:4, 38:13, 38:18,
    38:21, 38:25, 39:5, 39:20,
    39:23, 39:25, 40:4, 40:8,
    40:9, 40:18, 40:19, 40:22,
    41:2, 41:5, 41:11, 41:13,
    41:14, 41:16, 41:25, 42:1,
    42:3, 42:6, 42:10, 42:15,
    42:20, 43:2, 43:11, 44:5,
    44:8, 44:10, 44:12, 44:20,
    44:24, 45:4, 50:9, 53:6,
    60:21, 61:18, 61:22,
    63:1 .
**ashamed** 46:12 .
**assault** 13:24 .
**assessment** 59:3, 60:7 .
**asset** 17:11 .
**assets** 28:7 .
**Assistant** 1:30, 2:17, 5:8, 14:18,
    23:4, 23:19 .
**associate** 22:4, 22:5 .
**astray** 62:13 .
**athlete** 50:23, 62:14 .
**athletes** 50:19 .
**athletics** 50:15 .
**attached** 44:18 .
**attention** 33:13, 33:18 .
**Attorney** 2:17, 14:18, 21:15,
    22:25, 23:4, 23:19, 27:6,
    27:14, 44:19, 57:9, 61:2,
    61:3 .
**Attorneys** 1:30 .
**attributable** 16:19 .
**August** 60:15 .
**aunt** 3:24, 6:15 .

**awakening** 46:19 .
**aware** 18:15, 30:20, 33:16,
    35:16 .
**awareness** 30:12 .
**away** 35:23, 48:1, 52:9 .
.
.
**< B >.**
**back** 3:9, 3:15, 6:24, 12:8, 23:10,
    27:12, 34:15, 37:16, 37:23,
    40:19, 41:5, 41:13, 47:18,
    49:24, 50:24, 52:19, 53:23,
    59:23, 62:13, 62:16 .
**bad** 39:11, 45:13, 45:16, 46:21,
    46:25 .
**balance** 7:6, 27:4 .
**balances** 29:18 .
**ball** 35:4 .
**ballpark** 30:2 .
**Baltimore** 1:16, 1:50, 14:1, 14:3,
    31:20, 48:20, 49:6,
    54:16 .
**Baltimorean** 52:13 .
**bank** 20:13 .
**banquet** 50:17 .
**base** 13:5, 13:6, 34:23 .
**based** 24:10, 25:8, 26:4, 26:25,
    32:6 .
**basis** 16:15, 47:22 .
**basketball** 31:22, 44:20, 44:22,
    44:25, 50:11, 52:17, 53:7,
    53:25 .
**bears** 16:2 .
**became** 23:12, 54:14 .
**become** 22:18 .
**becomes** 22:18 .
**becoming** 48:17, 48:18 .
**began** 23:11, 37:1 .
**beginning** 15:21 .
**begins** 12:18 .
**begun** 47:7 .
**behalf** 2:13, 3:5, 3:12, 9:5, 9:6,
    14:19, 14:20, 29:12, 45:7,
    45:14, 61:13, 61:18 .
**behavior** 17:17, 17:20, 20:2,
    20:25, 23:2, 23:5, 23:12,
    24:6, 24:9, 38:2, 39:8,
    46:3 .
**believe** 4:11, 22:12, 30:7, 31:10,
    33:15, 46:21, 55:25, 58:4,

    60:23 .
**believed** 5:23, 36:10, 36:11 .
**bench** 21:24, 50:7 .
**bend** 5:7 .
**benefit** 6:13, 6:14, 18:8,
    19:4 .
**benefits** 24:21 .
**Bennett** 1:22, 45:12, 47:11,
    49:4 .
**best** 30:7, 48:15, 61:23,
    62:15 .
**better** 45:20, 45:25, 49:22 .
**big** 52:16 .
**bigger** 17:5 .
**billboard** 23:23, 24:2 .
**billboards** 32:4, 34:2 .
**bipolar** 10:8, 10:10, 37:3, 37:8,
    37:15, 37:17, 38:8, 39:12,
    44:10 .
**birthday** 48:1 .
**bit** 6:16, 16:22 .
**black** 48:19 .
**blew** 52:19 .
**blood** 9:18, 9:19, 10:5, 42:2,
    42:7, 59:9 .
**bloodstream** 42:4 .
**blows** 32:1 .
**body** 46:25 .
**Bonus** 25:7 .
**bonuses** 25:7 .
**Booker** 6:20, 7:1, 8:11,
    55:8 .
**BOP** 41:19 .
**bounce** 62:15 .
**bound** 7:10 .
**brain** 39:12, 39:13 .
**brazen** 23:20 .
**brazenness** 24:5 .
**Bredar** 16:25, 17:4, 17:8, 17:14,
    17:19 .
**Brett** 44:23 .
**brief** 16:10 .
**briefly** 41:9 .
**broken** 47:3 .
**brother** 39:18 .
**brought** 45:18 .
**brown** 48:19 .
**built** 33:22 .
**Bureau** 15:12, 43:1, 44:5, 55:12,
    55:20 .

business 26:10 .
buttress 32:9 .
buttressed 32:25 .
.
.
< C > .
calculation 8:17, 12:25,
    55:9 .
call 36:9 .
called 52:12 .
calling 2:4, 51:5 .
capability 4:3 .
capacity 62:11 .
captain 52:15 .
card 20:12, 23:10 .
care 43:20, 50:19, 50:20 .
career 23:25 .
careful 18:24, 20:1 .
carry 19:6, 30:25 .
Carter 11:10, 22:17, 28:6, 29:7,
    60:18 .
case 2:4, 2:6, 2:25, 5:3, 6:4, 6:20,
    7:1, 7:15, 8:10, 8:11, 9:11,
    11:14, 12:18, 16:5, 16:17,
    16:24, 17:4, 17:6, 17:7,
    17:18, 17:23, 18:4, 18:5,
    18:16, 18:18, 18:21, 19:2,
    19:3, 21:10, 22:18, 26:7,
    26:15, 27:1, 29:17, 30:9,
    31:9, 32:13, 33:5, 33:9,
    33:13, 33:17, 33:25, 34:9,
    34:25, 35:23, 36:6, 36:13,
    36:21, 37:20, 38:22, 40:25,
    41:10, 41:12, 41:18, 42:19,
    42:24, 43:14, 54:22, 56:21,
    57:12, 61:1 .
cases 11:3, 17:23, 18:10,
    18:17 .
Category 6:2, 13:22, 14:9 .
caught 51:9, 53:17, 53:18 .
cause 55:21 .
caused 13:7, 45:17, 46:3 .
causing 46:15 .
ceased 20:19 .
certain 3:8, 5:24, 11:6 .
Certainly 4:5, 9:8, 24:7, 32:13,
    33:6, 34:25, 37:10, 37:22,
    38:24, 41:22, 41:23, 44:14,
    53:2, 55:24, 61:13 .
certainty 34:12, 41:7, 41:8 .

certify 62:24 .
Chad 1:10, 2:4, 24:1, 24:2, 24:3,
    32:5, 48:17, 48:18, 53:4,
    53:5, 53:8 .
champion 50:13 .
chance 30:23, 36:12, 49:24,
    51:16, 52:4 .
change 36:25 .
chapter 33:23 .
character 45:24 .
characteristics 8:4, 12:4,
    12:7 .
charge 14:2, 35:5 .
charged 13:3, 17:24, 20:8,
    23:9 .
charges 13:23, 13:24, 21:4,
    59:5 .
charging 2:8 .
charities 49:7 .
Charles 23:22 .
check 57:25 .
checked 38:23 .
Chicago 54:17 .
chief 11:4, 11:21 .
child 14:7, 47:9 .
children 14:5 .
chose 12:12 .
chosen 46:9 .
church 58:25 .
Circuit 56:21 .
circuits 34:17 .
circumstances 8:4, 23:3 .
cited 16:22, 16:24 .
City 23:21, 31:19, 31:24, 48:20,
    49:4, 49:6, 49:13 .
claiming 16:25 .
claims 24:6 .
clarify 28:15 .
class 48:14 .
clear 19:10, 22:15, 30:17, 32:20,
    35:20 .
Clearly 27:3, 30:4, 34:4,
    40:3 .
CLERK 11:11, 28:2, 29:9,
    60:16, 62:19 .
client 10:20, 23:1, 23:14, 24:15,
    61:21 .
clinical 36:17, 43:25, 44:3, 45:2,
    53:1 .
close 5:6, 54:21 .

co-conspirators 17:24, 18:7,
    18:9 .
co-counsel 19:24 .
co-employees 32:3, 32:10 .
coach 50:18 .
Coaching 39:25, 53:25 .
cocky 50:19, 50:21 .
Code 8:2, 57:5 .
colleagues 24:17, 24:22, 29:24,
    44:24 .
collection 57:10 .
College 31:21, 31:22, 31:25,
    44:21, 44:25, 47:17, 48:15,
    52:18, 53:6 .
coming 37:16, 38:15, 51:9 .
comment 26:4 .
commenting 17:15, 18:17 .
comments 15:23, 23:4, 25:21,
    49:11 .
Commission 11:7, 11:17, 11:20,
    12:13, 35:6, 35:10, 35:12,
    35:13 .
commit 2:8, 13:3, 56:22 .
Commitment 11:9, 29:8,
    60:25 .
committed 45:21, 62:4 .
committing 58:3, 58:6 .
communicate 58:3, 58:6 .
communication 36:8 .
communications 31:21 .
community 32:10, 34:24, 47:15,
    48:3, 48:7, 49:3, 49:5, 49:12,
    49:16, 51:7, 51:8, 52:7,
    53:19, 55:9, 56:2, 60:11 .
companies 15:18, 25:24 .
company 15:18, 20:7, 24:17,
    24:21, 25:12 .
compassion 52:21 .
compassionate 54:5 .
compelling 34:1 .
compensation 25:6 .
competency 36:10 .
competent 10:20, 36:13 .
competing 29:18 .
complete 22:3 .
completely 35:11, 38:14 .
complex 54:14 .
compliance 42:2, 42:7, 42:11,
    59:10 .
complied 12:23 .

comply 40:8 .
computer 1:43 .
conceal 20:5, 20:11 .
concerning 50:7 .
concerns 19:22 .
concert 49:3, 49:5 .
concluded 62:21 .
concluding 33:23 .
concurs 60:12 .
condition 28:25, 42:2, 56:9,
    57:6 .
conditions 26:9, 26:20, 40:11,
    42:14, 42:23, 56:7, 56:8,
    56:19, 56:20, 57:13, 57:14,
    58:20 .
conduct 16:6, 16:18, 21:11,
    32:13, 37:20, 41:11,
    41:14 .
conducting 26:10 .
Conference 36:5, 50:5,
    50:7 .
confident 10:20, 51:4 .
confidential 12:5 .
confinement 34:24 .
conflict 22:2 .
Congress 11:1, 35:5, 35:7 .
congressperson 35:9 .
consecutive 19:6 .
consent 27:16, 27:24, 41:25,
    42:1 .
consented 27:23 .
consequence 49:20 .
consequences 17:13 .
consider 8:3, 8:25, 35:17,
    62:1 .
consideration 8:19, 17:11,
    18:24, 20:1, 24:8, 46:4, 50:2,
    50:4 .
considered 8:1, 54:10 .
consistency 20:3, 54:13 .
Consistent 15:1, 16:9, 16:12,
    26:16, 42:4, 47:22,
    54:16 .
conspiracy 2:8, 13:2 .
constant 49:15 .
constitutional 7:7 .
constitutionality 6:22, 7:1 .
constructive 60:3 .
consult 7:11 .
contact 58:18 .

containing 12:5 .
contend 5:20 .
context 7:9, 16:23, 17:15,
    49:10 .
continue 27:11 .
continued 21:3, 27:8 .
continuity 43:19 .
contrast 30:5 .
contrition 21:1, 21:8 .
control 46:14 .
controlled 56:23, 56:25,
    59:19 .
conversation 31:3, 36:7 .
Conversely 7:21 .
convicted 58:5 .
conviction 33:25, 42:17,
    59:12 .
cool 45:11 .
cooperate 57:10 .
cooperating. 50:8 .
copy 11:14, 22:13, 22:14, 28:1,
    28:2 .
corporate 24:20, 35:8,
    47:18 .
Correct 4:12, 5:15, 5:16, 5:21,
    6:7, 13:13, 13:14, 14:24,
    14:25, 19:15, 24:3, 24:4,
    29:2, 36:18, 37:10, 43:23,
    44:1, 44:4, 50:12, 62:26 .
corrections 5:14, 5:17 .
cost 24:16 .
costs 24:21, 24:23, 58:23 .
council 53:25 .
counsel 2:10, 9:2, 9:4, 19:21,
    27:15 .
counseling 39:1, 54:1,
    55:18 .
Count 2:8, 11:15, 13:3, 15:3,
    19:11, 55:14 .
countless 45:18 .
country 34:17, 35:8 .
Counts 14:24, 15:2, 19:16 .
County 14:1, 14:3 .
couple 16:11, 31:3 .
course 17:18, 19:1, 25:22,
    34:19 .
Court 1:1, 1:48, 2:3, 2:16, 2:19,
    2:21, 2:25, 3:4, 3:7, 3:9, 3:14,
    3:19, 4:1, 4:7, 4:14, 4:24, 5:6,
    5:11, 5:14, 5:17, 5:19, 6:1,

6:6, 6:10, 6:11, 6:17, 6:18,
    6:19, 6:21, 6:25, 7:5, 7:14,
    7:25, 8:1, 8:9, 8:12, 8:13,
    8:14, 9:13, 9:21, 9:23, 9:25,
    10:3, 10:9, 10:12, 10:14,
    10:16, 10:19, 10:23, 11:5,
    11:11, 11:21, 12:3, 12:10,
    12:11, 12:15, 12:18, 13:15,
    13:25, 14:2, 15:1, 15:19,
    16:1, 17:2, 18:15, 19:10,
    20:12, 21:16, 21:18, 21:21,
    21:23, 22:9, 22:16, 22:17,
    24:2, 24:12, 25:1, 25:15,
    25:18, 25:20, 25:25, 26:2,
    27:3, 27:8, 27:17, 27:19,
    27:21, 27:24, 28:1, 28:5,
    28:11, 28:15, 28:20, 29:3,
    29:10, 29:18, 29:19, 29:22,
    29:25, 30:11, 30:13, 30:24,
    31:18, 32:12, 32:17, 32:21,
    33:21, 35:16, 35:17, 35:20,
    35:24, 36:14, 36:17, 36:19,
    38:17, 40:7, 40:8, 40:10,
    40:17, 40:20, 41:9, 41:14,
    41:17, 41:21, 43:3, 43:5,
    43:7, 43:9, 43:21, 43:24,
    44:2, 44:16, 45:9, 47:24,
    50:2, 50:6, 50:9, 50:11,
    50:14, 51:1, 51:3, 51:13,
    51:20, 54:2, 56:4, 56:19,
    58:15, 59:14, 59:23, 59:24,
    60:2, 60:17, 61:5, 61:9,
    61:12, 61:20, 61:25, 62:8,
    62:17, 62:19, 63:13 .
courthouse 33:11, 33:17,
    51:11 .
Courtney 1:40, 2:14, 3:1 .
Courtroom 1:23, 4:3, 11:11,
    15:16, 15:21, 33:15,
    40:23 .
courts 7:14, 11:3 .
coverage 24:16 .
covers 22:25 .
COVID 3:8 .
cracked. 52:10 .
crazy 46:19, 46:23 .
create 22:2, 53:5, 53:8 .
creating 32:22, 53:3 .
credit 43:14, 55:14, 59:5 .
credited 29:1, 29:6 .

crime 45:17, 56:23 .
crimes 45:20 .
Criminal 1:9, 2:4, 5:20, 5:23,
    6:2, 11:3, 13:21, 13:22, 14:6,
    14:9, 14:16, 19:19, 46:3,
    46:20, 58:5 .
CRR 1:47, 62:24 .
crucially 39:6 .
culpability 34:18 .
current 37:3, 44:10 .
currently 37:18 .
custody 55:12, 55:15 .
cut 24:18 .
.
.
< D > .
D. 1:22 .
daily 24:1, 39:4 .
dangerous 48:20, 58:14 .
Daniel 44:19 .
Danielle 14:4 .
date 44:14, 60:17 .
Dated 63:5 .
day 9:23, 10:11, 10:14, 21:9,
    21:12, 29:17, 39:16, 39:21,
    48:1, 51:23, 52:3, 52:6, 54:8,
    55:1, 62:17, 63:5 .
days 11:6, 11:20, 16:11, 38:20,
    39:10, 39:11, 39:12, 57:1,
    60:13, 60:25 .
deal 25:13 .
dealing 42:16, 51:9, 52:4, 53:17,
    53:18 .
dealt 27:5 .
Dear 45:12, 47:11 .
dearly 47:23, 49:19 .
decided 8:10 .
decision 46:11, 46:12 .
decision-making 16:14 .
decisions 45:14, 45:16, 45:25,
    46:22, 47:1 .
deducted 59:4, 60:8 .
deemed 13:8, 55:19, 57:2,
    59:18 .
deep 30:12, 46:14, 50:4 .
DEFENDANT 1:12, 1:33, 2:5,
    3:5, 3:18, 4:9, 5:5, 5:10, 5:13,
    7:13, 7:24, 9:20, 9:22, 9:24,
    10:2, 10:7, 10:11, 10:13,
    10:15, 10:18, 12:3, 12:7,

12:17, 15:2, 15:5, 16:6,
    16:13, 16:18, 18:5, 18:7,
    18:11, 18:20, 19:4, 19:18,
    19:20, 19:22, 20:20, 26:5,
    45:8, 45:11, 47:25, 50:8,
    50:13, 50:25, 51:2, 51:12,
    51:19, 56:1, 60:14, 61:24,
    62:7 .
defendants 17:23 .
Defender 5:9, 29:22, 30:2,
    36:6 .
defense 16:3, 16:22, 16:25, 26:4,
    27:15, 33:5 .
degree 31:21, 32:1 .
delayed 40:16 .
deletion 7:2, 7:6 .
deliberate 46:2 .
delusions 38:10 .
demonstrate 31:13 .
department 25:3 .
departures 11:13 .
depressed 10:9 .
depression 10:8 .
deputy 11:11, 15:16, 15:21 .
describe 23:7 .
described 37:8 .
designated 59:5, 60:13 .
desire 9:7, 61:7 .
despite 18:6, 19:19 .
destruction 46:25 .
destructive 58:13 .
detention 55:1, 55:4, 56:10,
    58:22 .
determination 35:22, 35:24,
    36:1 .
determine 42:7, 45:5 .
determined 46:10, 58:16 .
deterrence 33:12, 33:15, 34:9,
    34:11, 41:7 .
deterrent 33:9, 33:20, 34:1,
    34:14 .
deterrents 41:10 .
developed 37:25 .
device 58:13 .
diagnosis 19:20, 38:11, 44:8,
    44:10 .
different 16:23, 53:18, 62:9,
    62:11 .
difficult 33:7, 33:14, 38:12,
    39:11, 41:4 .

direct 34:18 .
directing 11:22, 18:8 .
direction 35:19, 41:13 .
directly 16:19, 18:1, 18:2, 18:13,
    30:10 .
directs 35:16 .
disappointing 32:23 .
disappointment 49:15 .
discipline 39:15 .
disclose 36:7, 42:16 .
disclosed 20:15 .
disclosure 22:3, 42:18 .
discover 20:7 .
discovered 20:19, 20:20, 21:3,
    23:8, 23:15 .
discovering 25:5 .
discretion 19:14 .
discuss 44:7, 44:14 .
discussed 15:13, 61:6 .
discussing 27:15, 27:22,
    30:19 .
discussions 19:21, 19:24 .
dismiss 14:23 .
dismissed 13:24, 15:2 .
disorder 37:3, 37:9, 37:15,
    37:17, 38:7, 38:8, 38:12,
    39:12, 44:10 .
displayed 38:5 .
disposition 13:24 .
dispute 8:24, 13:1, 14:4 .
disputed 14:14 .
distinction 17:22 .
distinctions 17:4 .
distinguishable 18:16 .
distress 46:15 .
distressing 31:20, 31:24 .
District 1:1, 1:2, 13:25, 14:2,
    57:20 .
districts 34:17 .
DIVISION 1:3 .
divorced 35:11 .
DNA 57:10 .
doctor 43:25 .
Document 43:21 .
documents 11:7, 11:9, 11:25,
    20:10 .
doing 3:18, 31:22, 50:20,
    61:22 .
dollars 23:9 .
domestic 57:12 .

done 4:4, 28:21, 47:3, 48:24,
    48:25, 50:19 .
down 49:12, 49:13, 50:24,
    53:24 .
download 28:5 .
downside 17:13 .
downward 13:11 .
dramatically 24:18 .
draw 33:14 .
dreams 32:6 .
drive 23:22 .
driven 35:23 .
driving 35:2 .
drove 46:13 .
drug 33:12, 37:23, 39:24, 46:25,
    53:13, 56:25, 57:2 .
drugs 51:9, 52:4, 53:17 .
drugs. 53:18 .
drunk 52:15 .
due 15:15, 27:4 .
During 29:4, 31:3, 37:21, 37:24,
    45:22, 46:4, 55:16,
    56:17 .
.
.
< E > .
E-designate 43:19 .
E. 44:19 .
earlier 25:5, 38:5, 41:7 .
earn 60:6 .
easily 42:5 .
edge 52:25 .
effect 9:25, 10:16, 31:15, 31:16,
    32:3, 33:8, 33:10, 33:20,
    35:22 .
effective 34:14, 41:10 .
effectively 7:8, 33:4, 34:24, 35:2,
    39:1 .
effort 4:6, 20:5, 38:18, 46:10,
    58:2 .
efforts 20:9, 24:14 .
ego 24:5 .
egregious 20:8 .
eight 47:24 .
eight. 47:25 .
elaborate 15:23 .
eligible 55:19 .
eloquent 51:6 .
elsewhere 57:25 .
embarrassed 46:12 .

embarrassment 49:16 .
embezzle 51:22 .
embezzlement 24:13 .
embezzles 52:2 .
emphasizing 16:2 .
empirical 35:6, 35:12 .
employee 48:15 .
employees 47:13 .
employer 4:9, 20:13, 20:22,
    21:20, 41:5, 42:17 .
employers 59:12 .
employment 26:11, 26:17,
    26:25, 58:3 .
encouraging 32:23 .
end 38:21, 54:24, 56:11 .
enforcement 58:10, 58:12,
    58:15 .
engage 26:20, 45:20 .
engaged 18:1, 18:13, 38:22,
    58:4 .
engaging 17:20, 18:7,
    26:11 .
enhancing 18:19 .
enough 26:14, 53:4 .
ensure 11:5, 59:9 .
entered 2:7, 21:9, 32:14 .
entering 28:8 .
entire 35:3, 46:4 .
entitled 15:5 .
entity 24:20 .
entrusted 25:12 .
entry 60:25 .
episode 16:10, 16:13 .
episodes 37:10 .
equal 55:1 .
equals 56:11 .
equates 34:23 .
equation 54:15 .
equations 54:20 .
era 35:21 .
especially 39:6, 39:11 .
Esquire 1:28, 1:29, 1:35,
    1:36 .
Essentially 6:17, 17:10, 20:13,
    24:13, 25:8, 51:21, 55:4 .
event 5:24, 49:25 .
events 40:2, 49:5, 49:7 .
everyone 2:3 .
everything 30:3 .
evidence 35:6 .

exacerbating 37:14 .
Exactly 13:17, 20:17, 27:7, 34:7,
    47:14, 52:7, 54:9 .
example 16:23, 38:9, 48:22,
    48:23 .
exceeded 13:8 .
except 44:12 .
exception 40:5 .
excess 31:11 .
excessive 23:12, 41:1,
    56:14 .
exemplified 37:9 .
exercise 52:21 .
Exhibit 6:25, 13:19, 22:18,
    22:19 .
expect 33:19 .
expectation 17:12, 52:12 .
expense 21:5, 32:8 .
expenses 20:9 .
experience 49:17 .
experienced 23:1, 49:15 .
experiencing 16:13 .
explaining 41:13 .
Express 4:12, 4:16, 20:12, 21:8,
    23:9 .
extent 12:21, 24:8 .
extra 25:8 .
extraordinarily 37:6 .
extremely 20:8, 21:11, 35:20,
    45:15 .
eyes 60:11 .
.
.
< F > .
F-o-c-u-s 24:3 .
F-o-e-l-b-e-r 44:23 .
face 31:19 .
faces 49:16 .
facing 53:19 .
fact 16:15, 18:20, 23:6, 26:17,
    34:10, 34:11, 41:2, 42:16,
    53:14, 53:20 .
factor 17:9, 35:2, 35:23,
    37:18 .
factored 55:8, 55:10 .
factoring 55:5 .
factors 8:1, 8:2, 8:6, 8:19, 8:20,
    8:25, 17:16, 29:18, 35:17,
    41:12, 54:10, 55:8,
    55:10 .

**fair** 28:19 .
**fairly** 23:11 .
**falls** 26:22 .
**falsehood** 33:22 .
**falsehoods** 32:25 .
**family** 3:24, 6:15, 9:9, 9:14,
    12:5, 33:8, 40:1, 40:2, 45:15,
    46:23, 47:9, 47:21, 53:7,
    53:12 .
**far** 48:6, 49:11 .
**father** 3:21, 6:14, 39:17, 48:2,
    48:11 .
**fathom** 41:4 .
**FBI** 1:40, 3:3 .
**FCI** 43:4, 43:6, 55:22 .
**February** 6:24 .
**Federal** 1:48, 5:9, 6:11, 6:16,
    6:19, 6:22, 7:7, 7:10, 8:13,
    8:15, 11:2, 11:3, 11:5, 33:24,
    45:17, 54:2, 54:16, 54:17,
    55:14, 56:22, 57:20,
    61:1 .
**feel** 36:7, 39:14, 48:10,
    53:14 .
**feeling** 48:10 .
**feels** 7:20, 18:21 .
**fell** 46:14, 48:21 .
**felon** 34:6 .
**felony** 33:24, 58:6 .
**felt** 15:5, 46:5, 49:11 .
**few** 4:18, 9:16, 15:23, 23:4,
    25:21, 26:6, 30:4, 49:17 .
**file** 27:13, 27:23, 61:5, 61:7 .
**filed** 27:17, 27:25, 28:3, 29:14,
    36:19, 43:22 .
**final** 23:8 .
**Finally** 27:13, 44:6 .
**finance** 32:8 .
**financial** 25:10, 27:5, 57:8, 59:8,
    62:3 .
**find** 33:13, 52:1 .
**finds** 11:17 .
**fine** 4:7, 6:10, 28:20, 29:3,
    32:19, 60:5, 60:6 .
**finish** 22:19 .
**firearm** 58:13 .
**firm** 21:25, 22:1 .
**firms** 26:21 .
**First** 6:20, 8:17, 12:21, 12:24,
    14:17, 14:22, 25:23, 36:4,

    36:9, 36:22, 37:1, 37:25,
    38:18, 39:3, 40:7, 45:22,
    46:17, 55:3, 56:10, 58:7,
    58:20, 59:1 .
**first-order** 37:2 .
**five** 5:10 .
**fix** 47:3 .
**flat** 26:22 .
**flaunt** 21:4 .
**flaunting** 23:25 .
**fledgling** 23:25 .
**flight** 56:1, 60:10 .
**flipping** 37:4 .
**Floor** 1:49 .
**Focus** 24:1, 24:3, 32:5, 48:17,
    48:18, 53:5, 53:9 .
**focused** 16:3 .
**Foelber** 44:23 .
**follow** 44:5, 47:7, 57:16,
    58:23 .
**followed** 15:12, 47:7 .
**following** 9:2, 9:4 .
**follows** 55:10, 58:20 .
**football** 50:17, 50:18,
    52:15 .
**foregoing** 62:26 .
**foresee** 42:9 .
**foreseeable** 17:25 .
**forfeited** 28:16, 29:6 .
**forfeiture** 27:14, 28:7, 28:8 .
**forge** 20:10 .
**forging** 20:5 .
**forgot** 44:7 .
**form** 49:19 .
**formal** 6:16 .
**former** 4:9, 21:20, 24:17, 44:20,
    44:24 .
**forth** 13:1, 13:5 .
**fortuitous** 23:14 .
**Fortunately** 38:11 .
**forward** 9:10, 21:21, 34:6, 41:2,
    57:19 .
**found** 19:11 .
**four** 5:10 .
**four-year** 61:14 .
**Fourth** 56:21 .
**frankly** 20:16 .
**fraud** 2:8, 13:3, 16:5, 16:8, 17:7,
    17:17, 17:24, 18:2, 18:7,
    18:9, 20:5, 20:11, 21:3, 25:5,

    31:23, 32:2, 32:6, 32:13,
    32:17, 32:22, 35:9, 49:1,
    52:12, 62:3 .
**fraudulent** 18:14, 20:2, 20:6,
    23:5, 23:11, 24:6, 32:13,
    51:21 .
**fraudulently** 23:17 .
**free** 15:4, 49:5 .
**friends** 45:15 .
**front** 42:9 .
**frustrating** 31:19 .
**fulfill** 47:8 .
**full** 28:10, 35:17 .
**Full-size** 23:23 .
**full-time** 58:2 .
**funds** 24:13 .
**future** 40:21, 50:3, 59:11 .

.
.
**< G >** .
**G.** 1:47, 62:24, 63:12 .
**gain** 58:2 .
**Gall** 8:10, 55:8 .
**gambling** 17:10 .
**game** 35:4, 52:16 .
**Garner** 1:39, 4:21, 4:22, 11:22,
    43:16, 44:7 .
**gather** 60:14 .
**gave** 35:5, 49:8 .
**general** 33:12 .
**gets** 35:9, 38:24, 52:3, 52:15,
    54:19, 56:14 .
**Getting** 3:9, 3:15, 3:16, 25:7,
    31:25, 33:24, 50:24,
    58:7 .
**give** 14:17, 14:20, 22:19, 39:3,
    41:21, 42:11, 45:6, 49:10,
    51:23, 52:22, 60:13,
    61:22 .
**given** 13:11, 16:2, 19:4, 24:7,
    31:19, 39:4, 39:5, 40:17,
    49:23 .
**gives** 39:3 .
**Glad** 15:8, 22:11, 22:21, 29:14,
    45:9 .
**goal** 8:20 .
**goals** 8:22, 61:16 .
**God** 53:17, 59:22 .
**going.** 50:20 .
**gotten** 26:17, 29:25, 35:7, 38:23,

46:19 .
**Government** 2:13, 5:15, 6:25,
7:17, 7:19, 9:1, 9:3, 9:10,
13:12, 13:18, 14:19, 14:23,
15:4, 15:6, 15:10, 15:24,
18:14, 18:21, 18:23, 19:25,
20:18, 22:18, 28:25, 30:5,
30:14, 33:3, 33:4, 34:16,
34:19, 35:18, 37:7, 41:1,
52:23, 55:25, 60:11, 60:22,
61:10, 61:13 .
**graduate** 53:6 .
**grandeur** 38:10 .
**grandmother** 3:24 .
**granted** 13:15 .
**grateful** 47:2 .
**gravity** 30:12, 31:14 .
**great** 24:25, 25:13, 47:17, 48:12,
53:24 .
**greater** 8:21, 61:15 .
**greed** 46:13, 46:21 .
**group** 50:21 .
**grow** 47:5 .
**growing** 48:13 .
**growth** 46:8 .
**guarantees** 31:8 .
**guideline** 8:18, 8:24, 8:25, 11:13,
12:25, 13:5, 14:8, 14:10,
34:22, 34:23, 54:11, 54:12,
54:21, 55:9 .
**Guidelines** 6:22, 7:1, 7:3, 7:8,
7:10, 8:15, 8:19, 9:1, 14:13,
16:5, 16:17, 17:6, 17:15,
17:17, 18:19, 18:20, 18:22,
19:1, 19:9, 31:7, 34:16, 35:2,
35:9, 35:18, 35:22, 54:14,
54:15, 54:18, 54:24, 54:25,
55:2, 56:12 .
**guilt** 45:13 .
**guilty** 2:7, 6:13, 6:24, 11:15,
13:4, 13:19, 19:11, 31:8,
45:17, 45:23, 50:6 .
**gun** 33:13 .
**guns** 51:10 .
**guy** 48:8 .
**guys** 48:4, 48:12 .
.
.
**< H >.**
**half** 34:15 .

**hallucinations** 38:10 .
**hallway** 3:22 .
**handful** 40:5 .
**handled** 57:8 .
**handling** 42:22 .
**happen** 46:24 .
**happened** 33:25, 41:8 .
**happening** 42:10 .
**happens** 33:14, 51:25,
62:12 .
**happy** 24:11, 40:12, 41:20 .
**hard** 31:25, 39:10, 41:12, 46:1,
48:16 .
**harm** 24:20, 30:17 .
**harsh** 7:22 .
**haze** 39:24 .
**He'll** 27:10, 30:24, 30:25,
42:22 .
**heading** 36:10 .
**heal** 47:3 .
**health** 16:10, 19:22, 39:2, 43:9,
47:10, 53:1, 55:18, 59:10,
59:16 .
**hear** 9:1, 9:4, 15:8, 22:11, 22:21,
29:14, 45:9, 51:6, 52:2 .
**heard** 30:13, 61:14 .
**HEARING** 1:21 .
**heck** 52:8 .
**help** 20:10, 53:17, 59:24 .
**helpful** 54:11, 54:12 .
**hereby** 62:24 .
**High** 9:18, 9:19, 18:12, 48:14,
50:11, 50:18 .
**higher** 20:15, 51:5, 52:12 .
**highlight** 30:4 .
**highly** 17:13 .
**hip-hop** 23:25 .
**History** 5:20, 5:23, 6:2, 8:3,
12:5, 13:21, 13:22, 14:6,
14:9, 14:16, 19:19 .
**hit** 13:20 .
**hits** 25:10 .
**Hold** 4:24 .
**hole** 46:15 .
**home** 55:1, 55:4, 56:10, 57:25,
58:22, 59:1 .
**home-free** 27:9 .
**Honor** 2:12, 2:20, 2:24, 3:6,
3:11, 3:20, 4:6, 4:13, 5:16,
5:22, 6:9, 9:12, 10:22, 13:14,

14:25, 15:9, 15:22, 16:7,
16:17, 17:7, 18:9, 19:2,
19:15, 19:16, 20:11, 20:17,
20:24, 21:5, 21:10, 21:13,
21:22, 22:8, 22:23, 23:5,
24:10, 25:17, 25:19, 27:7,
27:13, 27:18, 28:13, 28:23,
29:16, 30:4, 32:12, 33:1,
33:11, 34:2, 36:20, 37:7,
37:25, 38:4, 39:9, 40:14,
40:19, 40:20, 40:23, 40:25,
41:16, 41:24, 43:2, 43:15,
44:11, 56:3, 61:8, 61:11,
61:24 .
**Honorable** 1:22, 47:11,
62:19 .
**hope** 47:15, 48:21, 49:1, 49:2,
49:9, 49:14, 49:23, 50:2 .
**hopeful** 46:3 .
**Hopefully** 40:20, 42:9,
59:24 .
**Hopkins** 1:36, 3:12, 3:15, 5:9,
10:19, 30:16, 31:1, 36:25,
61:4 .
**horrible** 46:11 .
**hours** 45:18, 57:15, 58:11 .
**house** 46:18, 55:4 .
**housed** 57:20 .
**housekeeping** 9:16 .
**huge** 49:20 .
**human** 24:23 .
**humiliated** 45:15 .
**hurt** 30:20, 41:12 .
.
.
**< I >.**
**idea** 37:17, 51:10 .
**identify** 2:10 .
**identity** 19:5, 20:4 .
**illness** 24:7, 37:23, 38:1, 38:7,
38:16, 39:6, 39:7, 39:10,
39:15, 39:24 .
**illusion** 32:22 .
**illustrates** 24:5, 24:9 .
**illustration** 62:12 .
**imagine** 23:15, 48:1 .
**imagined** 46:13 .
**immediate** 3:13 .
**immediately** 20:20 .
**impact** 4:9, 4:14, 21:14, 21:19,

22:12, 30:14, 32:9, 37:2,
39:6 .
**impacted** 30:20 .
**important** 30:8, 38:17, 39:23,
39:25, 46:5, 56:9 .
**importantly** 35:14 .
**impose** 8:6, 8:20, 41:18, 55:5,
60:5 .
**imposed** 8:5, 11:12, 19:12,
53:13, 59:14 .
**imposing** 7:12, 11:3, 41:9 .
**imposition** 11:6 .
**imprisonment** 57:1 .
**in-patient** 38:19, 38:20 .
**inappropriately** 18:19 .
**incarcerated** 43:11 .
**incarceration** 14:11, 15:11,
26:16, 55:2, 55:14,
55:17 .
**include** 8:3, 11:9, 11:12,
50:7 .
**including** 52:18 .
**income** 28:18 .
**incorrect** 44:9 .
**increased** 17:6 .
**incur** 59:5 .
**incurred** 37:21, 45:16 .
**indicate** 26:1, 58:17 .
**indicated** 7:16, 15:10, 16:1,
20:4, 21:13, 29:19, 34:2 .
**indicates** 20:25 .
**indicative** 16:18 .
**indicted** 2:6 .
**Indictment** 2:6, 11:15, 14:24,
19:16 .
**individual** 33:23, 36:1,
39:1 .
**individualized** 35:21, 35:24,
35:25 .
**individuals** 8:5, 15:16, 38:1,
38:7 .
**informant** 58:14 .
**information** 11:17, 11:19, 11:23,
12:5, 12:6, 59:8 .
**initial** 44:8 .
**initially** 57:17 .
**inner** 49:4 .
**inside** 22:11 .
**insight** 39:6, 39:15 .
**Instead** 32:1, 32:24 .

**instruction** 8:12 .
**instructions** 57:16, 57:18 .
**insurance** 15:17, 24:15, 24:16,
24:21, 25:23 .
**intend** 30:6 .
**intended** 18:4 .
**intention** 49:1 .
**interact** 58:3, 58:6 .
**interaction** 25:2, 58:11 .
**interest** 22:2 .
**introduced** 6:25, 13:18 .
**investigation** 4:20, 5:3, 9:17,
11:16, 12:4, 12:19 .
**investing** 17:13, 17:20 .
**involved** 17:24, 35:7 .
**involves** 16:5 .
**issue** 14:15 .
**issued** 6:18, 11:21 .
**issues** 10:3, 10:4, 12:6, 14:8,
24:16, 31:19, 42:8,
57:12 .
**itself** 35:7 .

.

.

**< J >.**
**Jamar** 44:19 .
**January** 6:21, 7:2 .
**JFX** 23:22 .
**job** 42:15, 42:21, 47:17,
52:18 .
**jobs** 26:6, 26:12, 26:18,
52:1 .
**joined** 2:14, 3:2, 3:21, 4:21 .
**Jones** 44:21 .
**journey** 45:23 .
**Judge** 4:23, 11:5, 11:21, 12:11,
16:24, 17:4, 17:8, 17:14,
17:19, 22:24, 29:9, 45:12,
47:11, 49:3, 54:16, 54:17,
60:16 .
**Judges** 7:10, 8:13, 8:15,
34:16 .
**Judgment** 11:9, 21:12, 28:14,
28:17, 29:8, 43:13, 45:13,
60:25 .
**July** 37:19 .
**jury** 19:11 .

.

.

**< K >.**

**keen** 30:12 .
**keenly** 30:20 .
**Keep** 5:6, 37:16, 45:9 .
**keeping** 35:5, 35:13, 35:15 .
**key** 6:17, 8:8 .
**kids** 48:19, 49:4, 50:22, 51:8,
51:15, 52:1 .
**kind** 20:25, 54:14, 58:11, 58:25,
62:10 .
**kinds** 32:6 .
**Kirstin** 1:36, 3:12 .
**knocked** 50:24 .
**knowingly** 57:20, 58:6 .
**knowledge** 18:2 .
**knuckles** 52:10 .
**Krulak** 21:15, 21:18, 21:19,
21:20, 22:1, 22:3, 22:10,
22:21, 25:15, 25:18, 29:11,
30:13, 37:19 .

.

.

**< L >.**
**lack** 19:18, 20:25 .
**lacked** 45:24 .
**language** 29:7 .
**large** 25:6, 35:8 .
**larger** 18:3 .
**last** 6:18, 6:24, 13:20, 40:22,
47:20, 49:17 .
**late** 38:2 .
**later** 33:2, 40:13, 44:14 .
**law** 10:25, 21:25, 22:1, 56:21,
58:9, 58:12, 58:14 .
**lawful** 7:17, 7:18, 60:22 .
**lead** 50:1 .
**learn** 24:24, 37:22 .
**least** 5:10, 57:1 .
**leave** 23:21, 38:20, 57:20 .
**led** 37:12 .
**leeway** 26:10 .
**left** 30:7, 36:9 .
**legal** 46:17 .
**length** 29:21, 34:13, 43:8 .
**lengths** 31:2 .
**lengthy** 29:20 .
**lenient** 7:20 .
**less** 13:9, 28:13, 30:1,
55:21 .
**letter** 6:23, 7:16, 13:17, 15:4,
44:19, 45:12, 60:21 .

letters 44:18, 45:1 .
level 13:5, 13:6, 13:9, 13:13,
    13:16, 14:9, 21:7, 34:23,
    42:4, 46:24 .
levels 13:7, 35:1 .
Lewis 1:40, 2:14, 3:2 .
licensed 44:3 .
life 31:15, 32:16, 32:17, 36:22,
    39:4, 39:22, 45:25, 46:4,
    46:8, 46:19, 48:3, 48:5,
    49:18, 49:25, 51:3, 51:4,
    52:20, 62:5, 62:8 .
light 13:7, 53:12, 56:21 .
likely 36:12 .
limits 53:21 .
line 3:25, 33:14, 38:9 .
list 41:19 .
lists 44:8 .
literal 37:12 .
litigation 27:5, 57:8 .
little 6:16, 16:22 .
live 27:11, 57:23 .
lives 37:18 .
living 39:9, 39:11, 58:1 .
local 25:12, 56:23 .
Lombard 1:49 .
long 7:18, 7:21, 12:2, 16:19,
    27:11, 27:12, 36:2, 38:3,
    45:22, 53:16 .
longer 14:16, 35:10 .
look 12:12, 20:23, 23:10, 28:12,
    31:6, 34:22, 35:6, 35:25,
    36:1, 37:23, 47:15, 48:7,
    48:19, 49:2, 50:10 .
looked 12:11 .
Looks 44:23, 47:16 .
Los 54:17 .
lose 37:5 .
loss 13:7, 13:8, 16:4, 16:18, 17:5,
    17:15, 17:25, 18:4, 18:12,
    18:19, 34:18, 35:3,
    37:21 .
losses 24:19, 45:16, 46:3 .
lost 52:2, 54:19 .
lot 16:3, 17:5, 17:21, 38:19,
    48:4, 48:11, 50:18,
    54:19 .
love 47:23, 49:16 .
loved 49:19 .
Low 43:4, 43:6, 55:22,

56:11 .
lower 54:24 .
lowest 6:1, 13:22 .
luck 61:23, 62:15 .
lying 39:12 .
.
.
< M > .
M. 1:36 .
madam 15:15 .
man 31:20, 54:1 .
manage 38:16, 39:4 .
mandate 51:14 .
mandated 12:23 .
mandatory 7:4, 7:6, 51:14, 56:7,
    56:18, 56:20, 57:13, 58:19,
    60:8 .
manic 16:10, 16:13, 37:9 .
Manisha 1:39, 4:21 .
Map 4:10, 4:15, 15:20, 21:15,
    21:19, 24:15, 24:17 .
marked 12:3, 12:7 .
marketing 26:12, 26:20 .
Marshals 4:2 .
Mary 1:28, 2:12 .
Maryland 1:2, 1:16, 1:50, 14:1,
    14:3 .
masking 37:13 .
mass 31:21 .
materials 43:18 .
matter 9:9, 15:18, 22:3, 27:10,
    28:23, 36:11, 53:18,
    63:3 .
matters 9:16, 14:14 .
Matthew 1:29, 2:13, 2:18 .
maximum 59:21 .
Mcdaniel 31:22, 44:21,
    44:25 .
mean 32:17, 52:19, 52:20,
    53:23 .
meaning 7:9 .
means 7:17, 11:24, 51:3 .
meant 46:20, 60:3 .
measure 34:18 .
mechanical 1:42 .
media 32:21, 33:17 .
medical 12:5, 12:6, 58:25,
    59:9 .
medication 9:17, 9:19, 10:5,
    10:6, 10:12, 36:21, 37:3,

38:24, 39:14, 42:2, 42:4,
    42:7 .
medications 39:21, 47:8,
    59:17 .
medicine 10:7, 10:8, 10:9 .
member 9:13 .
members 3:24, 9:9, 12:1, 12:12,
    33:8, 33:18 .
memo 22:24, 25:5 .
memoranda 16:3, 16:22 .
memorandum 9:3, 9:5, 15:6,
    15:10, 15:14, 15:24, 16:1,
    20:18, 26:2, 26:5, 29:13,
    29:20, 30:1, 40:10 .
mental 16:10, 19:22, 24:7,
    37:25, 39:1, 39:10, 43:9,
    46:25, 53:1, 55:18,
    59:16 .
mentioned 8:20, 20:18,
    58:21 .
message 34:4, 50:21, 51:7, 51:8,
    51:23, 51:24, 51:25, 52:7,
    52:8, 52:11, 53:10, 53:15,
    53:16, 54:9, 55:9, 56:14,
    62:2 .
met 36:4, 36:22, 43:2 .
metropolitan 53:13 .
Miami 54:17 .
Michael 1:40, 2:14, 3:2 .
microphone 5:6 .
mid 38:1 .
Miguel 44:21 .
Miles 21:25 .
million 13:8, 13:9, 17:7, 18:12,
    23:9, 27:4, 27:12, 28:11,
    28:14, 49:2, 51:22, 52:2,
    54:6 .
minimum 51:14 .
minus 6:7, 6:8 .
minute 38:25, 54:5, 56:8 .
minutes 4:18 .
mischaracterize 33:4 .
misrepresenting 17:1 .
missed 6:4 .
missing 37:10 .
mistakes 49:20 .
misuse 14:3 .
Mitchell 1:47, 62:24, 63:12 .
model 31:25, 53:24, 62:9,
    62:10 .

models 48:12 .
modest 23:11 .
modifications 26:9 .
mom 48:11 .
moment 36:11, 41:17 .
moments 23:4 .
monetary 13:7, 20:15,
    59:13 .
Money 4:10, 4:14, 15:20, 20:9,
    20:24, 21:4, 21:15, 21:19,
    24:15, 24:17, 24:19, 28:13,
    28:17, 42:16, 42:22, 52:9,
    60:6 .
monitored 47:4 .
monitoring 59:22 .
month 16:8, 16:11, 16:16, 23:8,
    23:16, 26:3, 26:24, 29:4,
    57:7, 59:15, 59:25,
    60:15 .
monthly 16:15 .
months 14:10, 15:11, 16:11,
    19:6, 20:1, 23:10, 29:17,
    36:4, 36:24, 40:16, 55:11,
    55:13, 55:17, 56:10, 58:22,
    59:1 .
mood 36:24, 37:1, 38:8 .
Morgantown 43:4, 43:6,
    55:22 .
mother 3:21, 6:14, 14:4, 14:7,
    48:5 .
motivated 48:23 .
motivating 37:18 .
Mount 23:22 .
moving 13:13, 14:23 .
MR. KRULAK 21:22, 22:23,
    24:4, 24:23, 25:2, 25:19 .
MR. PHELPS 2:20 .
MS 2:12, 2:16, 2:18, 2:21, 3:1,
    3:15, 4:8, 4:13, 4:22, 5:9,
    5:15, 5:16, 9:11, 9:12, 10:19,
    11:10, 11:16, 11:22, 13:13,
    13:14, 14:18, 14:22, 14:25,
    15:8, 15:9, 15:20, 17:3,
    19:15, 20:17, 21:17, 22:17,
    25:20, 25:21, 26:1, 27:7,
    27:13, 27:18, 27:20, 28:3,
    28:6, 28:10, 28:19, 28:22,
    29:2, 29:7, 29:10, 30:16,
    31:1, 36:25, 43:16, 44:7,
    56:3, 60:18, 61:4, 61:10,

61:11 .
MS. SETZER 27:22, 28:12 .
multiples 23:18 .
multistep 8:17 .
music 20:22 .
myself 45:19, 46:16, 47:3, 47:9,
    48:4, 49:18, 50:15 .
myth 53:3, 53:5, 53:8 .
.
.
< N > .
name 24:2 .
names 12:6, 30:22 .
narrative 23:1 .
national 54:13 .
nature 8:4, 23:20, 40:2,
    59:12 .
near 40:21, 51:16 .
nearly 39:1 .
necessarily 33:16, 34:13,
    52:22 .
necessary 8:21, 24:8, 59:18,
    61:16 .
need 5:7, 31:24, 35:10, 39:13,
    47:15, 50:16, 53:4, 61:4 .
needed 46:24, 47:4, 49:21 .
needs 59:10 .
negative 9:25, 10:16, 32:2, 32:3,
    60:4 .
new 23:25, 59:5 .
news 33:8, 33:20 .
next 11:20 .
Nice 2:16, 2:19, 2:23, 3:14, 3:15,
    4:22, 4:23, 4:24, 22:10 .
night 52:15 .
nine 47:25 .
No. 1:9, 5:19, 15:6, 29:14,
    43:22 .
nobody 49:7 .
normal 3:9, 3:15, 29:23 .
normalcy 47:10 .
normally 10:14 .
NORTHERN 1:3 .
nose 20:23, 20:24 .
note 4:19, 6:1, 12:22, 17:22,
    24:12, 24:14, 29:5, 38:17,
    43:11, 44:18, 60:24 .
noted 5:19, 7:5, 9:17, 13:22,
    23:3, 23:20, 25:5, 31:5,
    38:5 .

noteworthy 31:5 .
Nothing 36:22, 51:25,
    61:18 .
notice 4:1, 4:8, 4:11, 59:11 .
notify 27:24, 58:10, 61:5 .
notion 17:10 .
notoriously 38:12 .
number 2:5, 3:24, 18:25, 25:6,
    25:10, 26:8 .
numbers 54:19 .
.
.
< O > .
objected 27:23 .
objection 9:11 .
objections 5:14, 5:18 .
obtain 26:6, 27:1, 27:2 .
obtained 23:17, 23:18,
    28:18 .
Obviously 4:10, 17:3, 17:18,
    21:1, 21:6, 21:8, 24:23,
    24:24, 26:2, 50:10,
    56:16 .
occasion 53:11 .
occurred 5:25, 16:15 .
occurring 16:6, 16:20, 20:2,
    20:3, 34:9 .
offender 57:11 .
offense 8:4, 13:2, 13:5, 13:6,
    13:9, 13:16, 14:9, 30:20,
    31:14, 31:15, 34:23, 51:21,
    52:11, 52:12, 59:12 .
offenses 16:5 .
offer 19:17, 19:21 .
Office 11:22, 11:23, 22:25, 27:6,
    27:14, 30:2, 30:15, 36:6,
    36:9, 43:18, 57:9, 57:15 .
OFFICER 4:19, 4:23, 42:8,
    42:12, 42:21, 57:3, 57:11,
    57:17, 57:18, 57:21, 57:23,
    57:24, 58:8, 58:11, 58:17,
    59:6, 59:7 .
Official 1:48, 63:13 .
officials 11:25 .
Okay 6:1, 53:17 .
old 47:24, 62:6 .
once 50:17, 59:4, 59:25 .
One 4:24, 6:7, 6:9, 12:14, 13:25,
    14:4, 16:1, 17:8, 22:9, 23:10,
    23:15, 24:24, 26:11, 26:12,

26:13, 26:17, 26:20, 28:23, 29:17, 35:23, 37:9, 37:21, 39:20, 41:17, 50:15, 51:23, 52:6, 52:13, 53:11, 55:1, 56:25 .
**one-year-and-one-day** 41:18 .
**ones** 49:19 .
**ongoing** 23:6 .
**open** 40:20, 45:12 .
**opinion** 7:8, 53:2 .
**opinions** 6:17, 8:8, 8:9 .
**opportunities** 47:2 .
**opportunity** 5:2, 5:4, 6:4, 9:6, 14:18, 14:21, 40:18, 45:6 .
**opposed** 34:13 .
**opposite** 35:19, 52:7 .
**option** 46:9 .
**options** 43:2 .
**Order** 11:10, 11:21, 12:9, 12:10, 12:14, 27:14, 28:7, 28:8, 29:4, 29:8, 55:3, 60:25 .
**ordered** 38:23, 55:7, 56:16 .
**organization** 24:25, 30:22 .
**others** 3:25, 20:10, 30:20, 31:16 .
**otherwise** 11:13, 59:1 .
**outline** 6:19 .
**outside** 3:22 .
**overrepresentation** 5:20, 14:15, 16:4 .
**owe** 45:23, 49:24 .
**owing** 27:5 .
**own** 9:6, 18:8, 39:15, 45:6, 61:5 .

.

**< P >** .
**P.** 1:29 .
**p.m.** 1:18, 2:2, 62:21 .
**packet** 43:18 .
**page** 12:19, 12:20, 13:1 .
**pages** 30:1 .
**paid** 15:17, 25:8, 25:22, 25:23, 26:24 .
**pain** 25:13 .
**pandemic** 13:20, 40:16, 59:25 .
**panoply** 35:17 .

**Paper** 5:19, 15:6, 29:13 .
**papers** 44:19 .
**Paragraph** 6:23, 7:15, 9:16, 12:18, 12:20, 13:2, 15:3, 44:6, 44:9, 60:21 .
**parameters** 7:18, 7:21 .
**part** 12:8, 12:18, 19:23, 30:22, 39:9, 43:17, 46:20, 48:4, 48:6 .
**participate** 59:16 .
**particular** 7:2, 18:2, 18:18, 38:15, 54:25 .
**parties** 5:22 .
**partner** 21:25, 22:1, 22:4 .
**parts** 32:16 .
**party** 24:6 .
**pass** 29:24 .
**passage** 23:13 .
**passed** 10:25, 12:9 .
**past** 36:3, 40:4, 47:6, 50:1 .
**path** 46:20 .
**Patricia** 1:47, 62:24, 63:12 .
**pay** 27:3, 27:12, 30:17, 49:24, 58:23, 59:3, 59:13, 60:6, 62:3 .
**payday** 24:22 .
**paying** 24:21 .
**payment** 26:3, 27:8, 29:4 .
**payments** 57:7 .
**penalty** 19:11 .
**pending** 26:7, 26:8, 27:1 .
**people** 25:4, 25:6, 25:10, 25:14, 30:17, 30:18, 30:21, 31:24, 32:4, 32:5, 33:15, 34:2, 37:9, 38:19, 41:12, 42:22, 47:15, 48:19, 50:10, 53:13, 53:21, 60:1, 62:1, 62:12 .
**per** 5:18, 41:24, 59:14 .
**percent** 17:11 .
**performance** 25:6, 25:7 .
**perhaps** 12:1, 37:13 .
**period** 12:2, 16:7, 16:10, 16:16, 26:24, 27:9, 29:5, 34:20, 37:22, 52:14, 55:13, 55:16, 56:13, 56:17, 56:18, 58:22, 59:2, 59:20, 59:21 .
**periodic** 57:2 .
**permission** 42:21, 57:21, 58:7 .
**permit** 55:24 .

**permitted** 12:14, 58:24, 60:12 .
**persisted** 24:9 .
**person** 3:15, 39:19, 46:8, 49:22, 53:7, 58:7, 58:18 .
**personal** 8:3, 20:8, 46:24 .
**personally** 45:5 .
**persons** 4:2 .
**pervasive** 16:6 .
**Ph** 43:25 .
**PHELPS** 1:29, 2:13, 2:18, 2:19, 2:22, 2:24 .
**pick** 23:2 .
**picked** 23:5 .
**picture** 23:25 .
**piece** 37:10 .
**piggy** 20:13 .
**pill** 39:16 .
**place** 4:21, 17:11, 34:20, 48:20, 49:25, 55:20, 57:23, 60:14 .
**placed** 46:18, 56:5, 58:21 .
**Placement** 43:4, 43:5, 43:8 .
**Plaintiff** 1:7, 1:26 .
**play** 8:6, 17:16, 31:22, 52:18 .
**player** 53:7 .
**playing** 32:1 .
**plea** 2:7, 6:23, 7:16, 11:14, 13:17, 13:19, 15:1, 15:3, 15:14, 19:7, 19:17, 19:21, 21:9, 31:6, 32:14, 45:24, 50:6, 60:21 .
**pleading** 19:5, 45:17 .
**Please** 2:11, 4:18, 4:25, 5:1, 45:4, 49:24 .
**pleasure** 61:22 .
**pled** 6:13, 6:24, 11:15, 13:3, 31:8 .
**plenty** 62:5, 62:8 .
**plexiglass** 22:11 .
**plus** 56:11 .
**podium** 22:10 .
**point** 8:16, 17:8, 17:14, 18:15, 22:6, 23:19, 26:11, 26:13, 26:14, 26:23, 33:21, 34:6, 34:19, 41:5, 41:18, 57:19, 61:9 .
**pointed** 19:16 .
**points** 23:2, 30:4 .

**policy** 12:2, 50:6 .
**poor** 16:13 .
**portion** 12:20 .
**pose** 58:16 .
**position** 27:24, 31:12, 41:6 .
**positive** 54:3 .
**possess** 56:23, 58:12 .
**possession** 28:25 .
**posturing** 32:21 .
**potential** 19:22, 38:11 .
**potentially** 39:21 .
**powerful** 33:20 .
**pray** 50:2, 51:16 .
**pre-booker** 35:21 .
**preceding** 23:11 .
**prefer** 3:7 .
**preliminarily** 3:6 .
**preliminary** 27:14 .
**preparation** 61:13, 61:21 .
**prepared** 4:20, 11:16, 22:24, 39:22 .
**preparing** 11:10 .
**prescription** 59:19 .
**Present** 1:39, 30:9, 57:12 .
**presentence** 4:20, 5:3, 5:8, 9:17, 11:16, 12:4, 12:8, 12:19, 38:6, 44:6 .
**presenting** 6:5 .
**Press** 4:10, 4:15, 15:20, 21:15, 21:19, 24:15, 24:18, 26:14, 33:5, 33:8, 33:13, 33:18, 33:19 .
**pressure** 9:18, 9:19, 10:6 .
**presumably** 61:6 .
**presume** 14:11 .
**presumed** 8:16 .
**Pretrial** 26:9, 26:19, 38:22, 40:6, 40:15, 43:13, 44:12, 56:4, 60:11 .
**pretty** 42:3, 54:21 .
**previously** 7:3 .
**price** 62:3 .
**primarily** 38:8 .
**Prior** 15:21, 19:24, 21:12, 21:24, 25:23, 27:16, 30:13, 31:3, 33:19 .
**prison** 33:24, 34:7, 35:10, 46:6, 51:10, 52:5, 52:14, 52:22, 53:12, 54:8, 56:6, 56:13, 56:15, 57:16, 59:4, 60:1,

60:8 .
**Prisons** 15:12, 43:1, 44:5, 55:12, 55:20 .
**privately** 49:21 .
**privileged** 36:8 .
**probably** 36:23, 39:20 .
**Probation** 1:39, 4:19, 4:23, 11:22, 42:8, 42:12, 42:21, 43:18, 57:3, 57:11, 57:15, 57:17, 57:18, 57:21, 57:23, 57:24, 58:8, 58:11, 58:17, 59:6, 59:7 .
**probationary** 34:24 .
**problem** 54:1 .
**problems** 17:5, 22:6 .
**Procedure** 61:2 .
**procedures** 10:24 .
**proceed** 4:17, 10:20, 36:13 .
**proceeded** 20:21 .
**proceeding** 15:22, 19:2, 26:7, 27:16, 30:15, 30:19, 31:4, 36:11, 40:13, 43:16, 44:14, 50:7 .
**Proceedings** 1:20, 1:42, 40:17, 40:21, 62:21, 63:1 .
**proceeds** 29:1 .
**process** 6:11, 6:16, 6:19, 8:17, 8:23, 9:15, 60:3, 60:4 .
**produced** 1:43 .
**professional** 53:2 .
**program** 43:19, 44:25, 55:20, 58:23, 58:24, 59:17 .
**project** 53:24 .
**prominent** 52:13 .
**promises** 47:9 .
**promoted** 26:12, 26:17 .
**promotion** 26:18 .
**proper** 26:18, 59:21 .
**property** 28:24, 29:6 .
**prosecuted** 21:2 .
**prosecution** 34:10, 34:12, 41:8 .
**prosecutions** 33:16, 53:14, 53:15 .
**PROTECT** 10:25, 11:2, 11:4, 12:22 .
**protocols** 3:8 .
**proud** 47:6 .
**provide** 15:15, 41:20, 59:7, 59:11 .

**provided** 8:12, 15:21, 30:14 .
**providers** 39:2 .
**provisions** 7:6, 11:1, 11:2 .
**PSR** 40:12 .
**psychiatric** 36:21 .
**psychological** 55:17 .
**psychologist** 36:17, 43:25, 44:3, 45:3, 53:2 .
**psychosis** 37:12 .
**psychotic** 38:5, 38:13 .
**Public** 3:25, 5:9, 11:25, 12:1, 29:22, 30:1, 36:5, 41:2, 41:3, 49:20 .
**publicize** 24:14 .
**publicly** 46:12 .
**pulls** 35:19, 35:23 .
**punished** 26:14, 53:9, 53:20, 62:2 .
**punishment** 26:15, 33:6, 34:10, 34:12, 34:13, 41:8, 49:21 .
**purported** 32:5, 48:25 .
**purpose** 46:6, 46:7, 54:13, 54:15, 54:18, 54:19 .
**purposes** 46:6 .
**Pursuant** 8:17, 12:9, 15:3, 61:1 .
**push** 41:12 .
**put** 19:25, 29:7, 35:4, 60:1 .
**putting** 41:5, 52:13 .
.
.
**< Q >.**
**quarter** 37:21 .
**question** 41:10, 41:11 .
**questioned** 58:9 .
**questions** 24:10, 25:16, 57:22 .
**quite** 3:16, 20:16, 27:11, 29:20 .
**quotes** 16:21, 17:1 .
.
.
**< R >.**
**R.** 1:35 .
**rabbit** 46:15 .
**rails** 42:13 .
**raised** 10:3 .
**Randallstown** 50:11 .

**range** 8:18, 8:24, 8:25, 11:14, 12:25, 14:10, 14:11, 40:5, 54:11, 54:12, 54:21 .
**rate** 59:14 .
**raw** 24:13 .
**RDAP** 43:8, 55:19 .
**RDB-19-0264** 2:5 .
**read** 16:1, 21:18, 22:12, 24:11, 29:13, 36:19, 44:25, 45:2, 45:3, 53:1, 56:4, 56:21 .
**ready** 4:17 .
**real** 24:23, 32:9, 37:19, 46:8, 51:25 .
**reality** 50:23 .
**realize** 32:6, 53:21 .
**really** 23:14, 31:23, 32:2, 38:21, 50:21, 52:24 .
**reason** 11:12, 55:25, 58:4 .
**reasonable** 8:16, 14:12, 15:5, 26:25, 29:17, 31:12 .
**reasons** 11:12, 26:13 .
**rebut** 37:17 .
**rec** 53:25 .
**receded** 38:14 .
**receive** 55:17, 57:18 .
**received** 21:13, 33:17, 33:19 .
**recent** 56:21 .
**recognize** 14:19, 29:12 .
**recognized** 17:19 .
**recognizing** 19:3 .
**recommend** 15:4, 35:3, 43:3, 43:7, 43:9, 55:16, 55:19, 55:22 .
**recommendation** 14:12, 18:24, 20:1, 31:2, 41:1 .
**recommendations** 41:20, 43:1 .
**recommended** 44:13, 52:22 .
**recommends** 56:5 .
**reconcile** 46:1 .
**record** 2:10, 19:10, 21:23, 22:14, 40:6, 40:18, 63:1 .
**record.** 50:5 .
**recorded** 1:42 .
**recount** 30:3 .
**recrimination** 24:25 .
**recruiting** 20:10 .
**redefine** 50:3 .
**redemption** 49:14 .

**reduced** 30:17 .
**redundant** 15:25 .
**reentry** 40:20, 59:23, 60:2 .
**referenced** 6:23, 18:6 .
**Referring** 36:14, 43:21 .
**reflect** 39:5, 43:13, 44:9 .
**reflecting** 45:18 .
**reflection** 46:5 .
**reflects** 61:5 .
**Reform** 7:7 .
**refrain** 56:24 .
**regain** 47:4 .
**regardless** 18:1 .
**registration** 57:11 .
**regular** 16:15 .
**regularly** 16:6, 33:11, 35:7, 36:24 .
**rehab** 38:20 .
**rehabilitation** 38:19, 47:10 .
**reinstated** 59:24 .
**rejected** 34:18 .
**relationship** 48:5 .
**relatives** 12:6 .
**release** 15:13, 26:25, 27:10, 29:5, 40:9, 40:24, 41:19, 41:24, 42:3, 42:14, 42:18, 42:23, 55:4, 56:6, 56:17, 56:18, 57:1, 57:16, 58:22, 59:2, 59:20, 59:21, 60:3 .
**released** 20:20, 43:12, 59:23 .
**relevant** 21:11, 34:19, 34:21 .
**remain** 27:4, 42:11 .
**remained** 38:14 .
**remanded** 55:7, 55:12 .
**remarks** 14:20, 29:12, 51:6 .
**remember** 50:17, 52:13 .
**Remind** 29:7 .
**reminder** 24:1 .
**remorse** 20:25, 21:12, 30:6 .
**remorseful** 30:24, 45:16 .
**rendered** 7:3, 7:8 .
**repeatedly** 37:7 .
**repeating** 15:25, 16:2 .
**report** 4:20, 5:3, 5:8, 5:18, 9:17, 11:16, 12:8, 12:19, 36:19, 38:6, 43:17, 43:24, 44:6, 45:3, 56:4, 57:15, 57:19, 60:13, 60:14 .

**Reporter** 1:48, 63:13 .
**reporting** 57:17, 60:17 .
**reports** 12:4, 53:1 .
**represent** 61:2, 61:3 .
**representation** 44:17 .
**representing** 50:17, 61:21 .
**represents** 21:19, 56:1 .
**request** 41:24, 43:3, 43:13, 43:17, 44:13 .
**requested** 55:22, 59:7 .
**requesting** 15:11, 26:2, 26:24 .
**requests** 26:9, 26:19 .
**required** 10:24, 19:13, 51:5, 54:22, 57:11 .
**requirements** 12:22, 42:18 .
**requires** 11:4 .
**research** 34:11 .
**reserve** 5:18 .
**reserved** 5:24 .
**reserving** 6:4 .
**respect** 9:18, 11:2, 13:2, 13:21, 53:2, 54:12 .
**respected** 31:21 .
**respectfully** 43:3 .
**responsibility** 13:12, 21:7, 45:21 .
**responsible** 17:25, 18:3, 18:11, 18:13, 25:2, 25:9 .
**rest** 39:22, 45:25, 57:7 .
**restitution** 15:13, 15:15, 15:17, 25:22, 27:4, 28:24, 29:1, 29:3, 29:6, 56:17, 57:4, 59:14, 60:7 .
**restoring** 47:10 .
**restrictions** 3:23 .
**result** 7:8, 24:14, 46:11 .
**results** 31:25 .
**resume** 40:21 .
**return** 17:11 .
**revenue** 25:9 .
**review** 5:2, 5:4, 7:14, 11:25, 12:13, 40:12, 40:13 .
**reviewed** 5:8, 15:7, 22:15, 29:19, 30:16, 43:2, 44:18 .
**revised** 12:9 .
**RICHARD** 1:22 .
**Richardson** 1:40, 2:14, 3:1 .
**ridding** 20:14 .
**rights** 60:20 .

**rise** 62:19 .
**risk** 41:3, 52:4, 56:1, 58:16, 60:10 .
**risky** 17:13, 17:20 .
**RMR** 1:47, 62:24 .
**road** 36:2, 53:25 .
**role** 25:4, 31:24, 48:11, 53:24, 62:9, 62:10 .
**roll** 53:3 .
**room** 36:5 .
**roundly** 34:18 .
**routine** 42:6 .
**rubbing** 20:24 .
**rude** 46:18 .
**Rule** 61:1 .
**Rules** 61:1 .
**running** 52:4 .
**.**

**.**
**< S >.**
**S-t-e-j-s-k-a-l** 36:15, 44:2 .
**sacrifice** 48:4 .
**safety** 41:2, 41:3 .
**salable** 28:25 .
**salaries** 24:18 .
**sale** 29:5 .
**sales** 32:18 .
**sat** 36:5 .
**satisfied** 5:11 .
**save** 46:24 .
**saw** 32:4, 34:2, 36:25 .
**saying** 20:23, 31:10, 32:18, 47:12, 47:14, 51:1, 51:18, 54:4 .
**says** 34:22, 34:23, 42:5, 55:1 .
**scandal** 35:8 .
**schedule** 26:3 .
**scheme** 17:24 .
**schizoaffective** 38:7, 38:11 .
**schizophrenia** 38:9 .
**School** 48:14, 50:11, 50:18 .
**Schrum** 4:20, 11:16 .
**score** 5:24 .
**se** 5:18 .
**sealed** 12:11, 12:20, 50:5 .
**seated** 3:7, 14:17, 36:1 .
**seating** 3:23 .
**second** 4:25, 8:9, 49:24 .
**Secondly** 38:4 .

**Section** 8:2, 12:3, 12:7, 12:10, 13:5, 54:25, 55:2, 57:5 .
**sections** 7:2 .
**seeing** 33:21 .
**seems** 35:8, 37:21 .
**seen** 27:19 .
**self-discipline** 46:14 .
**self-financing** 32:22 .
**self-motivated** 42:10 .
**self-surrender** 44:13 .
**send** 52:6 .
**sends** 54:9 .
**sense** 25:7, 33:2 .
**sent** 21:14, 34:4 .
**sentence** 7:12, 7:17, 7:19, 8:7, 8:20, 11:6, 11:12, 15:4, 15:11, 18:22, 19:6, 19:13, 29:16, 31:8, 31:11, 33:24, 34:24, 35:3, 40:25, 41:18, 43:8, 46:2, 51:17, 51:23, 52:22, 54:8, 54:18, 54:23, 55:5, 55:6, 56:6, 56:15, 60:23, 61:14, 61:25 .
**sentenced** 13:4, 15:2, 62:1 .
**sentences** 8:5, 11:3, 33:16, 35:10, 51:10, 51:14, 53:12 .
**Sentencing** 1:21, 2:9, 6:16, 6:19, 6:22, 7:7, 8:15, 8:22, 10:21, 11:7, 11:17, 11:20, 12:13, 14:12, 15:6, 15:10, 15:24, 16:1, 20:18, 21:9, 26:1, 26:5, 26:7, 26:8, 29:13, 29:19, 30:1, 31:2, 35:6, 35:12, 35:13, 35:21, 40:10, 50:1, 50:7 .
**serious** 41:11, 46:17, 46:19 .
**seriousness** 31:14 .
**Seroquel** 37:1 .
**serve** 46:7, 55:21, 62:11 .
**served** 55:14 .
**Service** 4:2 .
**Services** 44:12, 56:4, 60:11 .
**set** 13:1, 13:5, 26:3 .
**SETZER** 1:28, 2:12, 2:13, 2:16, 2:18, 2:21, 3:1, 4:8, 4:13, 5:15, 5:16, 9:11, 9:12, 13:13, 13:14, 14:18, 14:22, 14:25, 15:8, 15:9, 15:20, 17:3, 19:15, 20:17, 21:17, 23:4,

23:19, 25:20, 25:21, 26:1, 27:7, 27:13, 27:18, 27:20, 28:3, 28:10, 28:19, 28:22, 29:2, 29:10, 56:3, 61:10, 61:11 .
**seven-count** 2:6, 11:15 .
**several** 16:7, 16:16, 17:23 .
**severe** 37:5, 37:6 .
**Sex** 57:11 .
**shall** 11:12 .
**share** 50:16 .
**shattering** 49:18 .
**shoot** 20:21 .
**short** 36:22, 41:19, 48:21 .
**Shouldn't** 17:8, 26:15 .
**show** 31:25, 49:23 .
**showed** 48:23 .
**showing** 41:14 .
**shown** 40:24, 49:2 .
**Shusterman** 16:24 .
**sides** 60:23 .
**sight** 49:15 .
**signature** 20:6 .
**signed** 31:6 .
**significant** 33:17 .
**similarly** 8:5, 37:24 .
**simply** 18:25, 54:7 .
**single** 15:25, 18:14, 39:16 .
**sir** 3:19, 4:18, 5:2, 5:5, 5:13, 7:13, 7:24, 9:19, 9:20, 9:22, 9:24, 10:2, 10:13, 10:15, 10:18, 12:17, 21:21, 45:7, 45:8, 50:13, 50:25, 51:2, 51:12, 51:19, 62:7 .
**sister** 3:23, 6:15 .
**situated** 8:5 .
**situation** 18:4, 18:10, 38:13, 38:18 .
**situations** 16:23 .
**six** 36:24 .
**small** 25:12, 30:22, 36:5 .
**Smith** 14:4 .
**social** 32:21 .
**society** 46:1, 47:9 .
**sole** 18:5, 35:2 .
**solid** 40:6 .
**somebody** 17:10, 32:8, 47:15, 47:16, 48:7, 52:2, 61:25 .
**someone** 32:24, 40:15, 58:5 .
**sometimes** 39:13 .

somewhat 54:16 .
somewhere 18:25 .
son 39:18, 39:25, 45:15, 47:22,
    47:24, 47:25 .
sorry 27:19 .
sort 15:24, 17:12, 17:20, 18:8,
    18:11, 20:22, 21:3, 23:1,
    23:3, 23:20, 24:5, 26:14,
    28:17, 31:4, 33:22, 35:11,
    35:24, 37:16, 39:4,
    39:24 .
sound 31:10, 46:23 .
sounds 26:6 .
speaks 49:7 .
Special 1:40, 2:14, 3:1, 3:2, 57:6,
    59:3, 60:7 .
specific 19:20, 33:12 .
Specifically 7:5, 8:14, 11:4 .
spend 34:7, 45:17 .
spending 20:23, 30:18,
    40:1 .
spent 20:9 .
spoke 31:1 .
spoken 43:15 .
sponsored 49:6 .
sporadic 16:12 .
sports 32:1, 39:25 .
stabilizer 36:24 .
stabilizing 37:2 .
stand 3:10, 4:18, 5:1, 45:4,
    45:13, 50:3, 51:15 .
standard 56:7, 56:19, 57:14,
    58:19 .
standards 29:22 .
standing 3:7, 3:13 .
stands 62:17 .
star 52:17 .
started 19:2 .
starting 8:16, 13:1 .
State 6:17, 8:14, 50:13,
    56:22 .
statement 4:10, 4:14, 11:11,
    21:14, 21:19, 22:12, 45:6,
    45:7 .
States 1:1, 1:5, 2:4, 6:18, 6:20,
    6:21, 8:2, 8:9, 8:10, 8:12,
    11:5, 57:5 .
station 23:23 .
status 17:12 .
statute 7:18, 7:22, 19:12, 19:13,

35:16 .
statutes 51:13 .
stay 47:17 .
stayed 38:21 .
steal 51:22 .
stealing 52:9 .
Stejskal 36:9, 36:14, 38:6,
    41:24, 42:5, 43:17, 43:24,
    44:2, 45:2 .
stenographic 63:1 .
stenography 1:42 .
Step 12:21, 12:24, 14:22, 22:10,
    34:15, 45:22, 53:19,
    60:2 .
stepfather 3:22, 6:14 .
stepmother 3:21, 6:14 .
Stockbridge 22:1 .
stop 58:10 .
story 33:23, 49:14, 50:16 .
straight 33:14, 56:13 .
Street 1:49, 20:22, 23:22,
    52:1 .
strongly 53:14 .
structure 55:11 .
structured 54:23, 56:11 .
subject 7:14, 11:25 .
submission 5:19, 37:8,
    43:21 .
submit 56:25, 59:9 .
submitted 9:3, 9:5, 15:6,
    22:25 .
submitting 20:6 .
substance 43:10, 55:18, 56:24,
    56:25, 59:17, 59:19 .
substances 38:15 .
substantial 25:10 .
succeed 32:24, 40:23 .
succeeded 50:11 .
success 32:5 .
sufficient 5:11, 8:21, 43:8,
    61:15 .
suggested 40:10 .
summarize 56:8, 56:20 .
superhero 48:10, 48:11 .
Supervised 15:12, 26:24, 27:10,
    29:5, 40:9, 40:24, 41:19,
    41:23, 42:3, 42:14, 42:18,
    55:3, 56:6, 56:17, 56:18,
    58:21, 59:2, 59:20, 59:21,
    60:3 .

supervision 40:6, 40:9, 40:11,
    40:15, 41:4, 56:19 .
supervisor 20:5, 25:3 .
supporting 24:13 .
supposed 35:12 .
Supreme 6:18, 6:21, 6:25, 7:5,
    7:25, 8:9, 8:11, 8:14,
    35:20 .
surprised 24:24, 37:22 .
surrender 55:24, 56:5,
    60:12 .
switch 37:4 .
symptoms 37:5, 37:6, 37:14,
    38:5, 38:9, 38:13 .
SZEKELY 1:35, 3:6, 3:11, 3:14,
    3:20, 4:5, 5:8, 5:17, 5:22, 6:3,
    6:8, 9:9, 10:19, 10:22, 13:23,
    14:15, 14:20, 22:7, 22:8,
    22:13, 22:14, 25:16, 25:17,
    28:13, 28:17, 28:21, 28:23,
    29:12, 29:16, 29:24, 30:3,
    31:6, 31:18, 32:11, 32:19,
    33:1, 36:16, 36:18, 36:20,
    41:23, 43:6, 43:23, 44:1,
    44:4, 44:16, 51:6, 51:24,
    61:4, 61:8, 61:17, 61:18 .
    .
    .
< T > .
table 38:10 .
talent 32:7, 32:8 .
talked 17:4, 17:8, 17:21, 36:6,
    47:12, 50:9 .
talks 51:24 .
targeting 28:17 .
taught 48:12 .
teach 47:18 .
team 52:15, 53:25 .
teammate 44:20, 44:22,
    44:23 .
teammates 44:24 .
teams 39:25 .
tear 46:22 .
telephone 14:3 .
ten 24:17, 30:17, 30:21, 32:3,
    32:10, 47:12 .
terminated 20:21, 21:2, 23:21,
    23:24, 25:4 .
terms 9:2, 10:4, 15:13, 16:4,
    24:16, 25:22, 26:10, 26:16,

27:8, 32:15, 32:18, 41:23, 43:1, 50:22, 52:11, 54:22, 55:5, 55:8 .
**terrible** 49:17, 52:7 .
**test** 56:25 .
**testing** 42:2, 42:6, 42:7, 59:9, 59:18 .
**tests** 57:2 .
**thankfully** 20:20 .
**theft** 19:5, 20:4 .
**themselves** 2:10 .
**therapies** 47:8 .
**therapy** 40:3 .
**thereafter** 57:2 .
**third** 13:13, 39:9, 59:25 .
**thorough** 44:17, 61:12, 61:21 .
**Though** 4:5, 23:2, 33:6 .
**thoughts** 39:7, 39:8 .
**threat** 56:1, 60:10 .
**three** 8:10, 15:12, 40:11, 44:24, 47:6, 47:20, 56:6, 56:18 .
**throughout** 34:17 .
**thumbing** 20:23 .
**Thursday** 59:25 .
**ticket** 32:18 .
**tickets** 49:3 .
**today** 2:9, 3:18, 3:25, 6:5, 8:3, 9:15, 9:21, 10:1, 10:5, 10:12, 10:21, 13:4, 15:22, 21:8, 21:14, 27:17, 27:25, 29:18, 30:13, 30:16, 31:4, 32:15, 33:19, 34:4, 36:2, 37:8, 38:13, 39:14, 40:19, 43:2, 47:23, 50:3 .
**together** 43:3 .
**took** 10:7, 48:12 .
**tool** 42:12 .
**tools** 39:3 .
**top** 48:13, 48:14 .
**topic** 30:6 .
**total** 13:9, 13:15, 14:8, 15:15, 55:11, 57:5 .
**totality** 28:8 .
**toward** 57:7 .
**towards** 36:10, 60:7 .
**track** 40:18 .
**tracks** 38:2 .
**Tracy** 4:19 .
**traffic** 58:10 .

**train** 23:23 .
**transaction** 18:14 .
**TRANSCRIPT** 1:20, 1:42, 62:26 .
**traveled** 36:2 .
**treat** 38:12 .
**treatment** 37:2, 38:22, 40:3, 42:11, 43:10, 55:18, 59:16 .
**tried** 48:13 .
**trouble** 46:17, 47:17 .
**troubles** 45:18 .
**true** 50:22 .
**truly** 36:10, 47:11 .
**trust** 47:4, 47:5 .
**trusted** 49:23 .
**truthfully** 57:22 .
**try** 28:5, 47:18, 60:2 .
**trying** 4:2, 6:6, 6:8, 28:15, 53:4, 54:13 .
**Tuesday** 60:16, 60:17, 60:18 .
**turn** 31:23, 44:11, 51:3 .
**turning** 51:4, 52:20 .
**turns** 47:25 .
**Two** 6:17, 7:2, 8:8, 8:9, 13:23, 13:24, 15:17, 23:2, 23:16, 26:13, 36:3, 38:16, 39:21, 40:4, 46:18, 47:20, 48:1, 57:2 .
**two-and-a-half** 55:13 .
**two-level** 13:11 .
**two-year** 19:13 .
**type** 49:9 .
**typical** 33:12, 33:13 .
.
.
**< U >.**
**unbelievable** 51:13 .
**unbridled** 23:12 .
**uncharged** 17:25 .
**undergoing** 16:13 .
**understand** 7:12, 7:23, 12:16, 17:2, 30:11, 32:11, 33:21, 46:6, 47:11, 47:13, 47:21, 49:8, 51:1, 51:17, 54:3 .
**Understandably** 52:8 .
**understanding** 31:13 .
**understands** 53:12 .
**Understood** 61:8 .

**undiagnosed** 37:15, 38:2 .
**undiscovered** 23:16 .
**unearned** 28:18 .
**unfortunately** 40:16 .
**uniformity** 54:18 .
**unit** 27:5, 57:8 .
**United** 1:1, 1:5, 2:4, 6:18, 6:20, 6:21, 8:2, 8:8, 8:10, 8:12, 11:5, 57:5 .
**unlawful** 56:24 .
**unlawfully** 56:23 .
**unreasonable** 52:24 .
**unreasonableness** 7:15 .
**Until** 20:14 .
**updated** 44:9 .
**upheld** 6:21, 6:25 .
**uploads** 43:18 .
**upset** 35:9 .
**USC** 35:15 .
**usual** 40:21 .
.
.
**< V >.**
**v.** 2:4, 6:20, 8:10, 63:1 .
**valid** 18:17, 59:19 .
**verifiable** 42:5 .
**verify** 4:19, 5:2 .
**Vernon** 23:22 .
**via** 43:18 .
**victim** 4:9, 4:11, 15:18, 17:12, 17:17, 17:18, 21:13, 21:18, 25:23, 30:14 .
**victims** 4:8 .
**video** 4:3, 20:22 .
**view** 22:6, 61:10 .
**violence** 57:12 .
**Virginia** 43:6, 55:23 .
**visibly** 53:20 .
**visit** 57:25 .
**voice** 45:9 .
**voluntarily** 60:14 .
**voluntary** 55:24, 56:5, 60:12 .
**vs** 1:8 .
.
.
**< W >.**
**W.** 1:49 .
**wages** 59:4, 60:9 .
**waive** 7:22 .

**waived** 7:17, 60:22, 60:23 .
**waives** 7:19 .
**walking** 28:3 .
**wanted** 18:15, 26:10, 32:19, 49:10 .
**wants** 9:13, 9:14 .
**warrant** 18:21 .
**warranted** 18:22 .
**Washington** 11:8, 11:20, 11:23, 12:1, 12:13 .
**watch** 32:24 .
**watching** 49:14 .
**weapon** 58:14 .
**weekly** 39:1 .
**weeks** 31:3, 36:25, 48:1 .
**weighs** 17:9 .
**Welcome** 3:4, 4:7, 9:8, 9:10, 9:14, 21:20, 22:22 .
**well-tailored** 42:23 .
**West** 43:6, 55:23 .
**whatever** 19:11, 24:7, 55:19, 58:10 .
**whatnot** 18:18 .
**whether** 17:24, 18:1, 23:20, 50:8 .
**white-collar** 51:21, 52:11, 53:15 .
**Whoa** 52:3 .
**whole** 32:1, 32:17, 53:18 .
**whom** 36:17, 60:1 .
**will** 8:23, 9:6, 9:15, 13:15, 14:19, 14:20, 15:2, 17:22, 20:14, 22:18, 24:7, 27:2, 27:3, 27:4, 27:5, 27:10, 27:11, 29:1, 29:5, 29:6, 31:15, 33:19, 36:8, 40:19, 40:21, 41:9, 41:16, 42:11, 43:11, 43:19, 46:4, 49:14, 51:5, 52:23, 55:11, 57:6, 57:8, 58:17, 59:3, 59:21, 59:24, 60:8, 60:12, 60:18 .
**William** 21:14, 36:14, 43:24, 44:2 .
**willing** 59:22 .
**wire** 2:8, 13:3 .
**wish** 45:5, 49:8, 49:19, 61:23, 62:15 .
**Within** 7:18, 7:21, 11:6, 11:20, 18:22, 18:25, 24:25, 36:25, 43:8, 57:1, 57:15, 58:11, 60:24 .
**Without** 15:24, 46:14, 47:1, 48:2, 53:4, 57:21, 58:7, 59:6, 59:19 .
**wondered** 34:3 .
**word** 26:18, 48:18 .
**words** 30:7, 36:1 .
**work** 31:25, 35:14, 45:25, 58:24 .
**worked** 48:15 .
**works** 52:19 .
**world** 48:20 .
**worry** 47:22 .
**worse** 47:21, 51:22 .
**write** 45:12 .
**written** 30:14, 37:8 .
**wrongdoings** 47:13 .
**wronged** 46:8, 46:15 .
**wrongs** 45:22, 46:9 .
.
.
**< Y >** .
**year** 6:12, 11:1, 11:22, 13:20, 21:9, 23:10, 23:17, 26:16, 51:23, 52:3, 52:6, 54:8, 55:3 .
**years** 6:18, 8:10, 15:12, 16:7, 16:16, 21:24, 21:25, 36:3, 38:16, 40:4, 46:18, 47:6, 47:21, 47:24, 49:17, 52:5, 53:24, 55:13, 56:7, 56:18, 62:6 .
**young** 22:4, 22:5, 31:20, 31:24, 32:4, 32:5, 38:1, 47:14, 48:2, 48:19, 50:10, 50:19, 53:13, 53:21, 54:1, 62:12 .
**yourself** 32:9 .
**youth** 49:13 .
.
.
**< Z >** .
**zero** 6:6, 6:8 .